## IN RE ESTATE OF JAMES M. BULLION.

### CLARK BULLION ET AL., APPELLEES, v. CURTIS W. RIBBLE, ADMINISTRATOR, APPELLANT.

FILED OCTOBER 22, 1910. No. 16,061.

1. **Executors and Administrators: LIABILITY FOR INTEREST.** It is the duty of an administrator to use reasonable diligence and dispatch in settling the estate committed to him and in delivering the residue of such estate to the heirs and distributees thereof, and for such services he is entitled to credit for his reasonable attorney's fees, expenses and compensation; but, if he negligently or in bad faith unreasonably delays the settlement of his estate, he is liable therefor to the heirs and distributees of such estate for the statutory interest upon all moneys in his hands or under his control as such administrator from the time when such moneys should have been paid by him to the date of payment of the same.

2. ———: **ATTORNEY'S FEES.** Where it appears that an administrator has defended a suit to which there was in fact no meritorious defense, the mere fact that counsel advised him that he had a defense is not sufficient. He must go further and show facts and circumstances sufficient to show that he acted reasonably.

3. ———: ———. And in such a case, where such facts and circumstances are not shown, the administrator is not entitled to credit for his attorney's fees or other expenses in making such defense.

4. ———: ———. Where the heirs and distributees of an estate in process of settlement in the state courts, without any just cause therefor, bring suit against the administrator of said estate in the federal court, the administrator is justified in defending such suit, and is entitled to credit on his account as such administrator for his reasonable attorney's fees and expenses in making such defense.

APPEAL from the district court for Saline county: LESLIE G. HURD, JUDGE. *Affirmed as modified.*

*S. R. Rush, L. W. Colby* and *Hall, Woods & Pound,* for appellant.

*Robert Ryan* and *W. G. Hastings, contra.*

FAWCETT, J.

This is an appeal from the decree of the district court for Saline county on an appeal from the county court of that county in the matter of the final settlement of the accounts of Curtis W. Ribble, as administrator of the estate of James M. Bullion, deceased. The decree being unsatisfactory to both sides, the administrator appeals, and the heirs at law of James M. Bullion, deceased, prosecute a cross-appeal.

The contentions of the respective parties are set forth in their briefs, and the record fairly supports the statements made by counsel. Briefly stated the facts are: That James M. Boullion died intestate in Saline county, Nebraska, January 9, 1901, leaving a widow, two sisters and a half brother, but no issue, him surviving. He owned 80 acres of land in fee simple and held school contracts for 240 acres more. He also owned considerable personal property.

January 21, 1901, his widow applied for appointment as administratrix of his estate. January 23, 1901, she was appointed special administratrix thereof. February 18, 1901, a sister and an aunt of the deceased, who were also his creditors, objected to the widow's appointment as

administratrix. February 19, 1901, the county judge ordered that all claims against the estate be filed within six months of February 22, 1901, and that all claims not filed within that time should be barred. Notice was given of this order by four weeks' publication in a weekly newspaper. February 19, 1901, the sisters of the deceased petitioned for the appointment of a Mr. Butler as administrator. March 20, 1901, the court overruled objections to the appointment of the widow, and appointed her jointly with Butler to represent the estate. Butler did not qualify. The widow qualified April 17, 1901. On the last named date the widow filed her inventory and report as special administratrix, the account was approved and she was discharged. Her attorney, Mr. Colby, was allowed $100 attorney's fees in the matter of the special administration, and she reported $620.60 of other expense, leaving cash in her hands, proceeds of the sale of personal property, $3,251.05. April 18, 1901, without notice to any one, on the widow's application she was allowed $50 a month for her support pending the settlement of the estate.

August 24, 1901, an order was made barring all claims against the estate not then on file in the county court, and hearing on those filed was continued till August 29, 1901. Upon the last named date the court allowed against the estate claims aggregating $6,881.88, not including interest, but the interest then accrued averaged less than six months' time on the claims. Of the claims thus audited, $2,553 bore 10 per cent. annual interest, $800 bore 8 per cent., and $3,525.88 bore 7 per cent.; $3,490.61 was a preferred claim for money in Bullion's hands as guardian for a ward residing in New York.

September 26, 1901, the administratrix filed a report showing the expenditure by her of $1,045.30, including 15 months' support, $750, and reported a balance of $2,579.04 in her hands. September 25, 1901, Mesdames Furmin and Ames, sisters of the deceased, and a Mrs. Hopkinson, an aunt, petitioned for leave to file claims against the estate, based on promissory notes signed by Mr. Bullion,

aggregating about $2,500. The record in this case does not state the fact, but in the opinion of Commissioner GLANVILLE, in *Ribble v. Furmin*, 71 Neb. 108, the statement is made that, intermediate the filing of objections to the appointment of Mrs. Bullion as administratrix of the estate of her deceased husband and the time claims against the estate were directed by the county judge to be filed, Judge Hastings, the attorney for the claimants, was appointed supreme court commissioner, and neglected to report that fact to his clients. The notes, it seems, were in Nebraska during this time.

December 29, 1901, Mrs. Bullion died, and December 30, 1901, Curtis W. Ribble, a DeWitt banker, was appointed administrator *de bonis non* of the James M. Bullion estate, and duly qualified. Hearing on the application of Furmin *et al.* was continued along from time to time till February 17, 1902, on which date the petitions were dismissed and supersedeas bond in the sum of $50 fixed for an appeal in each case. A joint bond of $150 was finally accepted, and the claimants appealed to the district court, where judgment was rendered in favor of the claimants to the extent of reversing the order of the county court and remanding the cases. Ribble appealed to this court, and on February 4, 1904, the district court was upheld, except that its order was modified so that the entire controversy should be settled in the district court.

February 5, 1902, Mr. Ribble filed, in the name of Mrs. Bullion, a final report of her acts as administratrix, showing that she had paid $2,000 on the preferred claim, which, added to other expenditures made and credits claimed by her, left in her hands a balance of $239.90. It is possible that $700 rent money is not properly accounted for, but there is not sufficient evidence to warrant us in disturbing the judgment of the district court upon that point. In the meantime Ribble had sold the school land contracts and the 80 acres of deeded land for the sum of $9,100.

August 4, 1902, the court on the *ex parte* applications

of Ribble, administrator, made two orders; one that $150 should be paid Messrs. Colby and Sands for service in resisting the claims of Furmin *et al.*, and the other that they should be paid $200 for services rendered in selling the land.   Previously Mr. Colby had been allowed $50 in addition to the $100 allowed for services as attorney for the special administratrix.   September 1, 1902, on *ex parte* application of Ribble, administrator, he was given authority to pay Colby and Sands the further sum of $300 for legal services rendered in resisting the claims of Furmin *et al.*

October 14, 1904, Furmin, Ames and Bullion, sole heirs, asked for an order settling the administrator's accounts and for a distribution of the residue of the estate. December 10, 1904, this petition was dismissed.   November 9, 1904, Ribble petitioned the county court for an order directing him to pay all unpaid claims, and November 10 the order was made.   November 10, 1904, on Ribble's *ex parte* application, the county court directed him to pay Colby and Sands the further sum of $1,050 for legal services rendered in resisting the claims of Furmin *et al.*   November 30, 1904, Ribble filed a report showing a balance of $4,364.38 in his hands.

December 2, 1904, Furmin, Ames and Clark Bullion, sole heirs of the deceased, filed a petition in equity in the circuit court of the United States for the district of Nebraska against Curtis W. Ribble as administrator of the estate of James M. Bullion, deceased, wherein many allegations of alleged fraud and misdoings on the part of the said administrator in the administration of the estate are set forth in the florid language so dear to the old-time equity draughtsman.   Among other things, the pleader charges that no claims have ever been allowed against the estate, and the money paid by the administrator was without authority, etc.   The prayer is for an accounting and a judgment for the amount due the respective plaintiffs. The federal judge overruled a demurrer to the petition and to the jurisdiction of his court, and thereafter an an-

swer and a reply were duly filed. It is stated by counsel that the cause now awaits the final order of the state courts in the premises.

It may be proper to state that after this court sustained the district court, as above stated, the claimants were met in the district court by all manner of motions which delayed a hearing. Mr. Colby, of counsel for Mr. Ribble, testified that he and his co-counsel, Mr. Sands, "did all kinds of ingenious things" in the cases, which deferred a final hearing. Upon the happening of the death of Mrs. Bullion, two of these claimants and their half brother, Clark Bullion, were the only persons interested in the residue of the estate, so they, with Mrs. Hopkinson, agreed to settle their claims out of court. Thereupon their attorney dismissed the claims to prevent further cost and delay, and then commenced the action in the federal court, above referred to.

November 12, 1904, the county judge made an order vacating the order theretofore made by him commanding the administrator to pay out the money in his hands. On the 13th of November, 1905, the last above order was annulled and a further order made to pay Mr. Rush $500 attorney's fees and all necessary costs in defending the suit in the United States court. The administrator has paid out the entire assets of the estate to the various claimants, other than the heirs, in liquidation of claims allowed and the interest which accrued thereon for about four years.

The district court found that the administrator should not have appealed to the supreme court from the order of the district court September 30, 1902, directing the county court to hear the claims of Furmin et al.; and all costs incurred in connection with that appeal, including attorney's fees and the administrator's personal expense, are deducted from the items of credit claimed by Mr. Ribble. An item of $175 is also deducted from said amount. The court further found that immediately after September 30, 1902, Ribble should have paid all claims against the

estate, and that he should have settled the estate not later than November 30, 1902; that the administrator retained in his hands for his personal benefit $6,000 and should be charged 7 per cent. interest thereon from November 30, 1902, less $180 interest accounted for by him. The court also deducts $770 claimed by Ribble for attorney's fees and expenses in federal court. Owing to an error in addition, this item is $100 too large. The correct amount is $670. The court further found that the administrator should account for $5,053.15 as of date August 1, 1908, less whatever money might be necessary to pay unpaid interest on claims against the estate.

The appellees have filed a cross-appeal wherein they insist the administrator should be held for failure to collect from Mrs. Bullion's bond an alleged balance in her hands of the money of the estate and not accounted for by her. Especially is exception taken to the report made by Ribble for the administratrix. Some of the challenged items relate to expense incurred in the widow's last illness and for her funeral expenses. We think it was within the discretion of the county court to consider those items and the excess of the widow's allowance in the light of support for the widow, and that these collateral heirs have no standing to question such credits. The objection to rent for homestead should also be overruled.

We think the court was right in refusing to give credit for attorney's fees and expenses incurred in the supreme court in resisting the claims of Ames, Furmin and Hopkinson. At the time Ribble, on the advice of counsel, resisted those claims, there was an abundance of money in his hands to pay all claims with interest, including the contested claims. Two of those claims were held by heirs of the deceased. None of the heirs requested the administrator to interpose objections to the payment of the notes, nor did any meritorious defense thereto exist. The authorities amply demonstrate that an administrator cannot shield himself from responsibility by stating that he followed the advice of his counsel. *Clement's Appeal.*

49 Conn. 519; *In re Huntley,* 25 N. Y. Civ. Pr. Rep. 78; *Mackin v. Hobbs,* 126 Wis. 216.

This brings us to the question of interest. It is a difficult one to solve. Mr. Ribble testified positively that he did not profit directly or indirectly from the possession all those years of something like $6,000 of the funds of the estate. However, with the exception of one year during which he received 3 per cent. interest on $6,000, he had the money deposited principally to the credit of himself individually and in his own bank. It is immaterial whether he unlawfully converted the money. It is sufficient that he mingled it with his private funds and made it subject to his personal check, instead of using it as administrator for the benefit of the estate, and this, too, in the face of the fact that many of the claims allowed against the estate were drawing 10 per cent. interest per annum. In such a case we think an administrator should be charged with the statutory rate of interest for all of the time the funds are so held and appropriated.

The attorney's fees and expenses in the federal court should have been allowed. There was no excuse for that action. The district court had never shown any disinclination to award appellees their full rights, and, regardless of the question of the jurisdiction of the federal court, which to our minds is none too clear, appellees should, in all fairness, have avoided the expense of resorting to that court, and have submitted any errors of commission or omission of the county court to the district court. To the extent that the plaintiffs therein claimed to be creditors of the estate such claims were then barred by the statute of limitations, and they could only be heard as heirs to demand their distributive share of the estate. The amount due them could only be determined, and was finally determined, in their favor by the state courts. Some of the allegations of the bill are untrue. For instance, there is no proof to sustain the allegation that no claims had ever been allowed against the Bullion estate. On the contrary, the proof shows that over $6,000 in

claims had been thus allowed. While there is some ground for dispute as to some of the smaller amounts allowed, and also as to some of those disallowed, we feel that the evidence before us will not justify interference by this court as to any of such items.

The judgment of the district court is therefore affirmed except as to the item of $670 attorneys' fees and expenses in the federal court, and the case is remanded to the district court, with directions to modify its judgment accordingly. The costs in this court to be taxed against appellees.

AFFIRMED AS MODIFIED.