# IN THE MATTER OF THE ESTATE OF THOMAS K. LALAKEA, DECEASED.

## No. 1329.

### ERROR TO CIRCUIT JUDGE FOURTH CIRCUIT. HON. C. K. QUINN, JUDGE.

ARGUED JANUARY 5, 1922.          DECIDED FEBRUARY 14, 1922.

### COKE, C. J., KEMP AND EDINGS, JJ.

EXECUTORS AND ADMINISTRATORS—*appointment of master to examine accounts.*

A master appointed to examine and report upon the final account of an administrator may be authorized to examine and report upon all prior annual accounts although such accounts have already been approved after having been examined and reported upon by other masters appointed for that purpose.

SAME—*effect of order approving annual account.*

An annual account of an administrator is only *prima facie* correct and while the administration is still pending is subject to correction of any errors or mistakes thereafter discovered in it without appeal or other direct proceeding to review it or set it aside although upon an *ex parte* hearing an order has been entered approving it.

SAME—*allowance of counsel fees.*

An allowance of counsel fees may be refused where the services for which the allowance was claimed were unnecessary in connection with the performance of the duties of the representative.

SAME—*same.*

Where an administrator has been allowed a retainer for counsel to protect the estate and the exigency presented was not such

as to require additional counsel it was not error to disallow anything further in that. behalf.

SAME—*same*.

In order to entitle an administrator to credit for counsel fees his expenditures must be reasonable and what is a reasonable amount in any particular case 'is a matter resting within the discretion of the probate judge and will not be disturbed on appeal unless it clearly appears that there has been an abuse of discretion.

SAME—*same*.

In fixing the amount of counsel fees to be allowed an administrator out of the estate the probate judge should not be governed absolutely by the opinion of professional men, the charge made by counsel or the contract of employment but should exercise his own fair judgment in fixing the amount allowable with reference to the labor, skill and care required, the value of the estate, the advantages gained or sought by the services and the good faith and reasonable prudence shown by the administrator who claims the allowance.

SAME—*same—to one other than administrator*.

An estate must bear the expense of its administration and when one of many persons having a common interest in the estate for the benefit of all and at his own expense takes proper proceedings to save it from destruction or to restore it to the purposes of the trust he is entitled to reimbursement out of the estate.

SAME—*same—same*.

When an administrator claims adversely to the estate to be the absolute owner of a portion of the estate and some of the heirs successfully contest with the administrator his claim of ownership they are entitled to have their reasonable expenses of that contest allowed out of the estate.

SAME—*same—same*.

When an allowance to a party is proper on account of counsel fees it may be made directly to his counsel without an application by the client.

SAME—*surcharge—interest*.

An administrator will be charged with interest when he uses the funds of the estate in his own private business or retains them in his hands for an unreasonable length of time to the prejudice of the heirs.

Syllabus.

SAME—*same—cost of litigation.*

Costs of litigation will not be allowed an administrator when he engages in useless, unnecessary or vexatious litigation concerning the estate in his hands.

SAME—*same—same.*

Where an administrator in good faith refused to pay a claim properly presented because he held a receipt which he thought was a receipt in full for the claim, and this is the only showing as to why payment of the claim was denied, he should be allowed the cost of the litigation which resulted although he was unsuccessful in his attempt to defeat the claim.

SAME—*duty to pay debts.*

It is the duty of an administrator to pay the personal debts of the decedent to the extent of the assets whether such debts are secured by mortgage on real estate or not.

SAME—*same—effect of failure to pay debt secured by mortgage on real estate.*

The administrator of a solvent estate in failing to pay a personal debt of the decedent secured by mortgage on real estate has caused legal injury, not to the estate of which he is administrator but to the heirs to whom the real estate should have descended discharged of the lien.

SAME—*commissions—disallowance.*

Statutory commissions are provided for the proper and faithful execution of trusts and when an administrator does not perform the duties devolved upon him by his appointment he is not entitled to commissions.

GIFTS—*deposit to credit of another.*

In order that the deposit of money in a bank by one person to the credit of another shall operate as a valid gift *inter vivos* it must appear that the depositor intended a gift and this may be shown by the conduct of the depositor or by his express declaration that the money is to belong to such other person.

SAME—*same.*

When one deposits money in a bank to the credit of another this alone and unexplained is sufficient evidence of delivery and acceptance but is not sufficient to prove the intention to make a gift of the fund.

OPINION OF THE COURT BY KEMP, J.

The plaintiff in error Solomon K. Lalakea was on the 22d day of June, 1915, appointed administrator of the estate of his deceased father T. K. Lalakea, who died on the 7th day of May, 1915. Immediately upon his appointment the administrator employed and retained W. S. Wise, Esq., an attorney at law, and the said W. S. Wise was the continuously retained and employed attorney of the administrator from the 22d day of June, 1915, until the 17th day of July, 1920, and advised and represented him in all matters pertaining to the administration of said estate during that period with the exception of a few small cases hereinafter mentioned and certain suits which had been instituted by the County of Hawaii and the First Bank of Hilo, Limited, against T. K. Lalakea in his lifetime involving approximately $125,000, and in which the administrator was substituted as defendant. The deceased had in his lifetime employed other attorneys to represent him in these suits and the administrator retained them to represent him in the further defense thereof. On July 22, 1915, the administrator filed an inventory of the estate which represented that the estate consisted entirely of promissory notes secured and unsecured, the secured notes being in the sum of $12,111.89 and the unsecured notes in the sum of $7,554.35, a total of $19,666.24, of which total sum $4,850 was represented to be of doubtful value. On June 21, 1916, the administrator filed his first annual account. This account was referred to H. L. Ross, Esq., an attorney at law, as master, who reported thereon after which the account was approved and allowed. On October 10, 1916, in compliance with an order theretofore made the administrator filed an amended inventory which contains an itemized list of the notes belonging to the estate but makes no further disclosure of assets. On June 2, 1917, the administrator filed his second annual account which was re-

ferred to T. J. Ryan, clerk of the fourth circuit court, as master, who reported thereon after which the account was approved and allowed in all respects as filed and presented.  On May 29, 1918, the administrator filed his third annual account.  This account was referred to Joseph S. Ferry, Esq., an attorney at law, as master, who reported thereon recommending that the administrator be surcharged for failing to collect in full the amount of principal and interest on certain notes due the estate. Various other recommendations were made by the master and on June 27, 1918, the administrator filed exceptions to the master's report.  On July 15, 1918, J. Lightfoot, Esq., entered an appearance on behalf of Hannah Makainai, one of the heirs at law of T. K. Lalakea, deceased, and objected to the allowance of the account.  The same day an order was issued requiring the administrator to make and file a complete report on or before October 2, 1918.  On October 7, 1918, the administrator filed a document entitled "Supplement to Third Annual Report" in which each item of the inventory was dealt with and its supposed condition stated.  Certain of the items were also alleged to be the personal property of the administrator and their inclusion in the inventory to have been by inadvertence.  These items included the note of John Kai, a $260 payment upon which had been included among the receipts listed in the third annual account.  On October 17, 1918, a hearing was had upon the third annual account, the master's report, the exceptions thereto and the detailed supplemental report after which it was ordered that the third annual account of the administrator be approved and allowed in all matters as therein stated and filed and a formal order to that effect was signed by the judge on October 18, 1918, which order also set forth that it had been shown to the satisfaction of the court that certain notes and mortgages

theretofore included in the inventory of the estate, including the Kai note and mortgage, were in fact the personal property of the administrator and authorized the administrator to "surcharge" the estate with $200 principal and $60 interest which had been entered in schedule A attached to his account. On January 9, 1919, J. Lightfoot, Esq., on behalf of Hannah Makainai, moved for an order requiring the administrator to show cause why he should not file his final account and make distribution of the estate in his hands. The order prayed for issued on the same day and on January 10, 1919, the administrator filed his response to the order to show cause setting forth among the reasons why he should not file his final account and make distribution of the remaining assets that there were certain actions pending in the circuit court against the administrator and that the matters in controversy were such that if judgment went against the administrator there would be no assets for distribution. It is shown that there was pending in this court on writ of error to the circuit court of the fourth circuit an action entitled "The First Bank of Hilo, Limited, v. C. K. Maguire and Solomon Lalakea as administrator," etc.; that there were pending in the circuit court several other actions with the same parties plaintiff and defendant, which actions involved the identical questions of law and similar matters of fact and which sought to recover from the administrator amounts totaling something over $40,000 in principal and interest, which actions by stipulation entered into between the attorneys for the respective parties and approved by the court were held in abeyance pending the decision of the supreme court upon the test case then before it. It was also shown that there were pending at that time various actions in which the County of Hawaii was plaintiff and the said administrator in his official capacity was de-

fendant, involving large sums and which the parties had been unable to get to trial. On January 13, 1919, J. Lightfoot, Esq., on behalf of Hannah Makainai, filed a motion for an order discharging the administrator and appointing an administrator *de bonis non*. This motion was supported by the affidavit of J. Lightfoot, Esq., and by the affidavit and motion it was made to appear that the administrator had squandered the assets of the estate, mismanaged its affairs and had not used due diligence in closing up the estate. The affidavit constituted a review of the matters set forth in the preceding inventories and annual accounts of the administrator. On the same day, January 13, 1919, an order was issued requiring the administrator to show cause why the motion should not be granted, which was made returnable January 15, 1919, and later by stipulation the time was extended to January 20, 1919. On that day the administrator filed his response to the order to show cause in which he recited in detail the proceedings already had in connection with the third annual account and supplement thereto as hereinbefore related and prayed that the motion of Hannah Makainai might be dismissed upon the ground that the matters therein contained had become *res adjudicata*. On January 27, 1919, the order was discharged without prejudice to the right of Hannah Makainai to renew the same at any time after a decision on the case of *Bank* v. *Maguire and Lalakea* above referred to. The question as to whether or not the matter was *res adjudicata* was not dealt with. The supreme court rendered its decision in the case of *Bank* v. *Maguire and Lalakea* above referred to on the 7th day of July, 1919, the decision being favorable to the administrator. On August 8, 1919, the county attorney of the County of Hawaii discontinued the cases of the county against the administrator above referred to. On February 12, 1920, the administrator

filed his fourth annual account and on February 16, 1920, an order was made appointing Norman D. Godbold, Esq., attorney at law, as master to examine and report upon the fourth annual account and all previous accounts. On February 24, 1920, the administrator filed a motion to revoke the order appointing Mr. Godbold or to modify it by eliminating therefrom the first, second and third annual accounts. No action having been taken on the motion of February 24, 1920, no doubt due to the fact that the circuit judge of the fourth circuit was at that time by reason of sickness unable to hear the matter, on June 17, 1920, Mrs. Moehihio Hewahewa, otherwise known as Mrs. Lily Hewahewa, a daughter and heir at law of T. K. Lalakea, deceased, moved for an order on the administrator to show cause why he should not file his final account and pray for his discharge as adminis- trator and on the same day an order to show cause issued. The same day Mrs. Hewahewa also filed objections to the first, second, third and fourth annual accounts of the administrator. On the same day, June 17, 1920, the administrator filed his response to the order to show cause last above referred to stating therein that he could not file his final account and pray for his discharge be- cause there was then pending in the fourth circuit court an action brought by him against one Sarah W. A. Todd for the recovery of $1174.10 alleged to be due to the estate and that it was necessary that such action be terminated and the judgment, if any, collected before he could file his account and pray for his discharge. On this same day, June 17, 1920, the administrator pre- sented his motion of February 24, 1920, to vacate or modify the appointment of Mr. Godbold as master, which motion was overruled. Messrs. Carlsmith & Rolph were at this time entered of record as counsel for Solomon. K. Lalakea, administrator, and at the same time the name

of J. Lightfoot was withdrawn as counsel for Mrs. Ma-
kainai and Mrs. Hewahewa and at his request Messrs.
Russell & Patterson were entered of record as counsel
for them. Upon the suggestion of Mr. Carlsmith that
he saw no reason why the final account of the admin-
istrator could not be filed within a week after the case of
the administrator against Mrs. Todd should be concluded
and the judgment, if any, collected the hearing of the
motion of Mrs. Makainai and Mrs. Hewahewa to require
the administrator to file his final account and pray for
his discharge was continued for one week and the Todd
case was set for trial on June 22 following. On that
day and the day following the Todd case was tried
resulting in a judgment in favor of the plaintiff for
$282.03 instead of $1174.10, the amount claimed. On
June 29, 1920, exceptions to the decision in the Todd
case were filed by the administrator who the same day
filed his supplemental response to the order to show
cause reciting that the decision in the Todd case was in
his favor but only for $282.03 instead of $1174.10 claimed;
that he had instructed his attorneys to take appellate
proceedings to reverse the judgment in said cause and
that he intended to take such appellate proceedings. He
also set up that there was pending before the master a
hearing on his accounts. June 30, 1920, there was a
further hearing on the order to show cause why the ad-
ministrator should not file his final account. From the
minutes of this proceeding it appears that the probate
judge stated that upon the payment of the amount of the
Todd judgment into court he would compel the admin-
istrator to file his final account forthwith. The defendant
in the Todd case thereupon deposited in court a sum of
money to satisfy the judgment. On July 6, 1920, an order
was made commanding the administrator to file his final
account on or before July 14, 1920. On July 14, 1920, the

administrator filed his fifth annual account together with
a petition for its allowance in which were also stated the
reasons why the administrator could not close the estate
at that time, one of the reasons being that his fourth
annual account had been referred to Mr. Godbold as
master, who had the same under consideration and that
it remained undisposed of. The administrator also stated
that he had under way appellate proceedings in the Todd
case and that money was being collected under garnish-
ment proceedings against James Low. On July 19, 1920,
the motion for an order discharging the administrator
and appointing an administrator *de bonis non* was heard
and at its conclusion an order was made discharging the
administrator and appointing O. T. Shipman adminis-
trator *de bonis non*. On July 21, 1920, the administrator
filed his final account. The same day the order appoint-
ing Mr. Godbold master to examine the various annual
accounts of the administrator was vacated and a new
order was made appointing him master to examine and
report on all the accounts including the final account.
On August 5, 1920, the master filed his report and on
August 30, 1920, the administrator filed exceptions to
the master's report and the same day there commenced
a hearing upon the master's report which continued from
day to day and from time to time up to and including
September 14, 1920, when the matter was submitted. On
February 7, 1921, the judge filed his decision in accord-
ance with which an order was entered February 8, 1921,
making the following surcharges against the former ad-
ministrator: Fee paid H. L. Ross and interest re Ah
Lum matter $20.97; costs and attorney's fees re Carl-
smith judgment $173.08; money deposited in Bishop &
Co.'s branch bank with interest $11,384.70; re mortgage
of First Bank of Hilo, Limited, interest and expenses,
$6086.58; Admrs. commissions $806.28; John Kai note

and mortgage $326.04; fees paid W. H. Smith $2850. The order also authorized the administrator *de bonis non* to pay to Norman D. Godbold, master, a fee of $1200 and to pay to Messrs. Russell & Patterson as attorneys for Hannah Makainai, George Lalakea and Lily Hewahewa for services rendered a fee of $900. On April 30, 1921, Solomon K. Lalakea sued out a writ of error in this court and has assigned the various surcharges and orders allowing attorneys' fees and masters' fees as error.

There is no assignment of error complaining of the order of July 19, 1920, discharging the administrator and appointing an administrator *de bonis non* but all of the assignments of error except Nos. 1, 2 and 3 relate to the decision of February 7, 1921, rendered after the hearing of the master's report on the administrator's final account and all prior accounts.

Under assignment of error No. 3 it is contended that error was committed in appointing a master to examine the final account with power also to examine and report upon the previous annual accounts. The argument is in effect that because there had been prior examinations of the annual accounts by other masters after which said accounts were approved the court was without power to authorize their reexamination. We are unable to agree with this contention unless the orders approving said accounts rendered the matters therein involved *res adjudicata*. The law upon this subject is well stated in a note to *Picot v. Riddle's Executor*, 86 Am. Dec. 134, the note beginning on page 143, where it is said: "These partial settlements are made either annually or more or less frequently, as the discretion of the court may dictate, and are called partial or annual settlements. But while all settlements of administrators' and executors' accounts are in a certain sense judicial determinations yet there is a particular distinction between annual and final settle-

ments.  The one is wholly *ex parte* and without notice; the other can be made only upon due publication of notice to creditors and all persons interested.  The one is made annually or oftener at the pleasure of the court; the other only when the estate is fully administered.  The one is for the information of the court and the convenience of the administrator in the management of the estate; the other for the protection of the administrator and is the final adjudication of the respective rights and obligations of the administrator, creditors and heirs.  The one is only *prima facie* correct and is subject to correction of any errors or mistakes thereafter discovered in it without appeal or any direct proceeding to review it or set it aside; the other is conclusive and final unless set aside by appeal or direct proceeding therefor or impeached for fraud.  The one is, so to speak, a judgement *de bene esse;* the other a final judgment."  See also 11 R. C. L. p. 181, Sec. 198.  We therefore conclude that there was no error in appointing a master to examine the final account and at the same time directing him to examine and report upon all previous accounts.

Assignments of error Nos. 1 and 2 complaining of the original appointment of Mr. Godbold as master and the order overruling a motion to vacate that order cannot be considered because an order was subsequently made vacating the appointment and making a new appointment which is complained of in assignment of error No. 3, which assignment as we have above indicated must be overruled.

Assignment of error No. 4 complains of the fee allowed the master for his services and will be disposed of in its proper order.

We shall consider the various surcharges and orders complained of in what seems to us to be their logical

order disregarding the numerical order of the assignments of error.

Assignment of error No. 6. The judge erred in his decision of February 7, 1921, in that he surcharged Solomon K. Lalakea with the sum of $20.97 on account of a fee paid by him to H. L. Ross, Esq. As above stated the administrator had from the inception of the administration a regularly employed and retained attorney at $500 per annum to represent him in all matters pertaining to the administration of the estate but notwithstanding this fact he employed Mr. Ross to collect a small note belonging to the estate for which he paid a fee of $15 on December 10, 1916. The surcharge of $20.97 is for this fee with interest thereon from the date of its payment. Not because the fee was unreasonable in amount nor because Mr. Ross did not earn it by the amount of work he did, but as the judge in his decision said, the expenditure was unnecessary in view of the fact that the administrator was paying another attorney an annual retainer to represent him. "An allowance of counsel fees may be refused where the services for which the allowance was claimed were unnecessary in connection with the performance of the duties of the representative." (24 C. J. 1056.) *In re Davis' Estate,* 35 Mont. 273, 88 Pac. 957, is to the effect that where an administrator has been allowed a retainer for counsel to protect the estate and the exigency presented was not such as to require additional counsel it was error to allow anything further in that behalf. We think the judge was right in his conclusion that there was nothing involved in the collection of this small note to which the regularly retained counsel of the administrator could not have attended. The administrator should not therefore be allowed to charge the estate with this fee. It appears, however, from the record that this expenditure was made prior to the rendition of the administrator's

second annual account and was reported in that account which was filed June 2, 1917, and shortly thereafter approved.

An administrator will be charged with interest where he uses the funds of the estate in his private business or retains them in his hands for an unreasonable length of time to the prejudice of the heirs. (*Walls* v. *Walker*, 37 Cal. 424; 99 Am. Dec. 290.) It does not appear that there was any use of this sum in the administator's private business and if the principal sum is now replaced we cannot see how the interest of the heirs can be prejudiced. Under these circumstances it does not appear to us to be equitable at this late day when the matter is further investigated upon the presentation of a final account to charge the administrator with interest on said amount. We conclude, therefore, that the probate judge was justified in surcharging the administrator with the amount of the fee paid but was not justified in requiring him to pay interest thereon.

Assignment of error No. 7. The judge erred in his decision of February 7, 1921, in that he surcharged Solomon K. Lalakea with the sum of $173.08 on account of the Carlsmith judgment. The facts involved in this surcharge are that after the appointment of the administrator Mr. Carlsmith duly presented his account in the sum of $400 against the estate for legal services rendered the deceased in his lifetime. The administrator refused to pay the account whereupon Mr. Carlsmith sued him. The administrator again, instead of using his regularly retained counsel, employed Mr. Ross to defend the suit of Mr. Carlsmith for which service he paid said attorney a fee of $50. His defense to the claim proved to be without merit and Mr. Carlsmith recovered judgment for $400 principal and $77.20 costs. The surcharge of $173.08 represents the costs and attorney's fees paid in this matter

together with interest thereon from the date of the payment. This payment was prior to the first annual account and was duly reported therein and approved. What we have already said in regard to the payment of the $15 fee applies equally to the payment of the $50 fee in this case. The regularly retained attorney of the administrator should have represented him in this litigation.

The costs expended other than the attorney's fee in this matter rest upon a different principle. We think it is well settled that unless the administrator acted reasonably in refusing to pay the account when properly presented he should not be permitted to tax the estate with the expense of the litigtaion which followed. "But counsel fees and costs of litigation will not be allowed the representative when he engages in useless, unnecessary, or vexatious litigation concerning the estate in his hands. * * * Accordingly, an administrator is not entitled to attorney's fees and funds expended in defending a suit to which there is in fact no meritorious defense, although advised by counsel that he had a defense, unless he affirmatively shows facts and circumstances sufficient to show that he acted reasonably in making the defense." (11 R. C. L. p. 236, Sec. 264. See also In re Bullion, 87 Neb. 700, 128 N. W. 32.) The only showing made as to why the administrator refused the payment of this claim, thus forcing Mr. Carlsmith to sue him, was made in a hearing before the master in which it was shown that he refused payment for the reason that he held a receipt, which he thought was a receipt in full, for all services rendered by Mr. Carlsmith to his father and the master found his refusal to pay the account under the circumstances to be reasonable. Under these circumstances we are unable to uphold that portion of the order surcharging the administrator with the costs of this litigation other than the attorney's fee, which we think was unnecessarily expended.

This expenditure was promptly reported in the first annual account, which account was approved. We therefore think that he should not be required to pay interest. Full justice will be done those entitled to receive the estate by requiring the administrator to pay in the amount of the attorney's fee thus unnecessarily expended.

Assignment of error No. 11. The judge erred in his decision of February 7, 1921, in that he surcharged Solomon K. Lalakea with the sum of $326.04 on the John Kai note and mortgage. The facts relative to this item are that in 1914 John Kai borrowed from T. K. Lalakea $700 for which he gave his note secured by mortgage. It is undisputed that $500 of the amount borrowed was repaid to T. K. Lalakea in his lifetime; that the administrator included the unpaid balance of the note in his inventory of the estate and when the $200 and interest was collected represented it as belonging to the estate by reporting it in his next annual account. Practically the only conflict in the evidence is as to whom the note was made payable, there being evidence in the record to the effect that it was made payable to T. K. Lalakea and other evidence to the effect that it was made payable to Solomon K. Lalakea. We think it is clear from the whole of the evidence that the business of negotiating the loan was transacted between John Kai and T. K. Lalakea and the probate judge so found in his decision. It was not until the filing of the supplement to the third annual account that the administrator made a claim that the note was his property instead of the property of the estate. At that time he convinced the probate judge that the note was in fact his property and an order was entered allowing him to withdraw from the estate the amount which he had collected on said note. After a hearing on the final account, the gist of the evidence being as above stated, the probate judge reversed his former holding and ordered

the administrator to account to the estate for the amount collected on said note with interest thereon from the date of its withdrawal from the assets of the estate. In this we think there was no error. If the note was in fact the property of T. K. Lalakea in his lifetime, and the evidence amply warrants such a finding, then it was the property of his estate after his death and the administrator should not be permitted to appropriate it to his own use notwithstanding the former decision of the probate judge at a time when at least most of the parties interested in the estate were not present or represented.

Assignment of error No. 8. The judge erred in his decision of February 7, 1921, in that he surcharged Solomon K. Lalakea with the sum of $11,384.70 on money deposited in Bishop & Co.'s branch bank with interest. The facts relative to this transaction are that on October 31, 1912, Thomas K. Lalakea opened an account with Bishop & Co.'s branch bank of Hilo in the name of his son Solomon Lalakea. At this time Solomon Lalakea was living in Honolulu and did not know of his father's action in opening said account and learned nothing of it until at least February 1915, when he returned to Hilo to look after his father's business. There are some expressions in his testimony which would seem to indicate that he knew nothing of it until after his father's death in May 1915, but other portions of his testimony make it certain we think that he learned of the existence of this account some time between his return to Hilo from Honolulu in February 1915, and the time of his father's death. Just how he learned of its existence we are not informed but Solomon has said in his testimony that his father did not tell him that he had given him this money. At the date of the death of the father this account amounted to $8094.90 which had been built up by numerous deposits between the time of the opening of the account and the death of

Mr. Lalakea. At least the probate judge found this to be the amount of said account on the date of the death of Mr. Lalakea and we find no serious dispute with this finding except the statement of counsel for the administrator at the close of their argument on this assignment of error that the account amounted to $8089.15. The bank book showing this account is before us but there is no balance shown on the date of Mr. Lalakea's death. The difference between the amount found by the probate judge and that stated by counsel for the administrator is so small that we shall not attempt to reconcile the discrepancy. It is shown that prior to the return of Solomon to Hilo the elder Lalakea made deposits in this account and drew checks against it although it is not made to appear in this record by what arrangement the elder Lalakea was permitted to draw checks against said account unless we take the statement of counsel in their brief that the checks were signed with the name of Solomon Lalakea, T. K. Lalakea adding his name. Solomon has testified that after his return to Hilo in 1915 to look after his father's business he drew checks against said account, but in response to a question as to whether he drew in his own name he said: "I drew as trustee." He also says that he made deposits of such money in this account as his father instructed him to deposit. Neither the checks drawn against this account by the father before the return of Solomon nor those drawn by Solomon after his return have been sent up as exhibits in this case although they were produced at the hearing, and the evidence on this point is otherwise quite unsatisfactory. Claiming that the money in question was his property by reason of a gift to him from his father the administrator did not report it as belonging to the estate. There does not appear to be any serious controversy between counsel as to the law applicable to this transaction. They agree that for the trans-

action to amount to a gift from the father to the son it must appear that there was (1) an intention to make a gift; (2) a sufficient delivery of the money, and (3) the acceptance of the gift by the son. It seems to be the contention of counsel for the administrator, however, that the mere deposit of money in the name of another in an ordinary checking account is sufficient to meet all of these requirements which the law imposes, while the contention of counsel for the contestants is that there must be something more than a mere deposit of money in the name of a third person before a court would be justified in finding that there was an intention to make a gift. Under the authorities we do not think there is any question that where one deposits money in a bank to the credit of another this alone and unexplained is sufficient evidence of delivery and acceptance and if the other element—intention to make a gift—is present the gift will be complete, but this is far from the conclusion which counsel for the administrator would have us reach—that such deposit conclusively shows an intention on the part of the depositor to make a gift to the party in whose name the deposit is made. The law on this question is well stated in the following authorities, from which we quote:

"Where the donor deposits money in the name of the donee and delivers to him or a third person for him a pass book therefor or where he by express declaration of trust constitutes himself a trustee of the donee in respect to such fund the transaction is a valid gift *inter vivos*. However, the mere fact of the deposit of money in the name of a third person without the delivery of a pass book or other evidence of intention to make a gift will not constitute a valid gift *inter vivos*." 20 Cyc. 1204.

"A mere deposit in the name of another, unaccompanied by acts or declarations indicating an intention to donate the fund is not alone sufficient to prove a gift. This intention to make a gift on depositing money in the name of another may be shown either by declarations of

the depositor that the money is to belong to such other person or by delivery of the deposit book to the donee. These circumstances, however, bear on the question of intention and it may be shown that the deposit in the name of another person is not a gift of the money to such other person notwithstanding the fact that the deposit book has been delivered to him." 12 R. C. L. 948. See also *McKinnon* v. *First Nat'l Bank,* 6 A. L. R. 111-113, 82 So. (Fla.) 748.

We are unable to find anything in the evidence which points to the conclusion that the depositor in this case had any intention of making a gift to his son. In fact all of the evidence except the mere deposit itself points the other way. Under these circumstances we think the probate judge was justified in his conclusion that the money in question was the property of the estate of T. K. Lalakea and that no gift thereof had in fact been made or intended.

The only other question in connection with this item which has been called to our attention is the question of whether or not the judge was justified in adding legal interest to the amount of the deposit and ordering the administrator to account therefor. Counsel for the administrator say that there is no evidence in the record which shows that the administrator withdrew the money in question and devoted the same to his own use and that this would be the only theory upon which he could properly be surcharged with interest. With this contention we are unable to agree. Where an administrator retains funds in his hands for an unreasonable length of time to the prejudice of the heirs it is proper that he be charged with interest thereon. (*Walls* v. *Walker, supra.*) In this case the money has been withheld from the estate since May 1915, and the existence of the account was only discovered at the time of the hearing before the probate judge. This we think constituted an

unreasonable withholding of the funds and was certainly to the prejudice of the heirs who were entitled to have the assets of the estate applied to its benefit. It also appears from an inspection of the pass book containing the account in question that on May 29, 1915, only a few weeks after the death of Mr. Lalakea, all but $145.72 had been withdrawn. This fact unexplained is sufficient to raise the presumption that the administrator withdrew it and devoted it to his own use.

Assignment of error No. 9. The judge erred in his decision of February 7, 1921, in that he surcharged Solomon K. Lalakea with the sum of $6086.50 on a mortgage of the First Bank of Hilo, Limited, interest and expense. The facts are that Thomas K. Lalakea at the time of his death owed the First Bank of Hilo, Limited, a note for $8591 secured by a mortgage on two pieces of land, one of which it is admitted was the property of the deceased at the time of his death, and the other the administrator claims under a deed from his father. The bank duly presented to the administrator its verified claim demanding the payment of this note. We are unable to gather from the record just what the administrator did with reference to this demand except that it appears that he regularly paid the interest as it accrued quarterly until some time in 1920, but made no report thereof until after nineteen quarterly payments of $171.82 each had been made. It seems that the administrator was erroneously of the opinion that all of the land covered by the mortgage was included in the deed to him from his father and he was therefore making these interest payments out of his own funds, but upon discovering that one of the pieces of land was not included in his deed he charged the estate with the interest payments theretofore made by him and so reported. It also appeared that both the administrator and his attorneys ad-

vised and requested the bank to foreclose the mortgage which it did on July 1, 1920. The expense of this foreclosure amounted to $2822, and the interest which the administrator had paid on the note and afterwards reported amounted to $3264.58. The surcharge in question is for these two items and is predicated upon the idea that it was the duty of the administrator to pay the note upon the presentation of the bank's claim and that his failure to perform his duty was sufficient to warrant the surcharge under consideration. Counsel for the administrator have advanced the argument that since the note was secured by a mortgage on real estate and real estate does not pass to the administrator there was no obligation resting upon him to pay the note or do anything to relieve the land from the incumbrance upon it. Of course they are correct in their statement that real estate does not pass to the administrator but it is equally clear that it is the duty of the administrator to pay the personal debts of the decedent (and this was his personal debt) to the extent of the assets whether such debts are secured by mortgage on real estate or not. (11. R. C. L. Secs. 172, 209; 24 C. J. 463; *Trustees Ena Estate* v. *Ena,* 18 Haw. 588; *Beard's Appeal,* 78 Conn. 481, 62 Atl. 704; *In re Patrick's Estate,* 100 N. W. (Neb.) 939.) The only thing that would relieve the administrator of his duty would be a lack of funds and since it appears that he had on hand at the time of his appointment or very soon thereafter sufficient funds to meet this indebtedness and all other debts owing by his father at the time of his death we conclude that it was his duty to pay said note and avoid the expense of foreclosure. Our attention is called to the fact that suits were pending against Mr. Lalakea at the time of his death which if successful would render the estate insolvent. But as it afterwards transpired these suits were unsuccessful and at the time of the foreclosure it was known that the estate was solvent.

It does not necessarily follow, however, that the order requiring the administrator to account to the estate for the expenses occasioned by the foreclosure of said mortgage can be upheld. Counsel have pointed out that the proceeds of the sale of said real estate after deducting the principal and interest due the mortgagee and the payment of the necessary expenses of foreclosure were payable not to the personal representative of the deceased but to his heirs for the reason that the law regards such proceeds from the sale of real estate as real property. It is said that the administrator was therefore not the proper person to call upon the mortgagee to account for the surplus after paying the mortgage debt and expenses. The question then arises, upon what theory could the estate be entitled to have the administrator account for this sum of $2822. It must be clear that the administrator in failing to perform his duty to pay a note secured by mortagage on the real property has caused a legal injury, not to the estate of which he is administrator, for the estate has no interest in the real property or its proceeds, but to the heirs to whom the real property should have descended discharged of the lien. We think therefore that the heirs are the only ones entitled to call the administrator to account and if the facts warrant it they are entitled in an action at law to recover from the administrator such damages, if any, as his dereliction of duty occasioned them. "If by the fault of the executor or administrator in not collecting personal estate or in not applying it to the payment of debts lands are taken from the heir or devisee the representative is liable to the person injured in an action of waste." (24 C. J. 460 (note). See also *in re Patrick's Estate, supra,* and *Mitchel* v. *Lunt,* 4 Mass. 654-658.)

There is very little authority on this question but the authorities support the text in 11 R. C. L. Sec. 186 to the

effect that "It seems to be well settled that a devastavit can only be committed at law in respect of assets actually received by the representative and in general it consists of the wasting of assets or a mismanagement of the estate and effects of the deceased in squandering and misapplying the assets contrary to his duty." There is no claim that with respect to this item the administrator is being surcharged for waste or misapplication of funds which he had actually received. It is therefore our conclusion that the expense of the foreclosure was not a proper subject of inquiry by the probate judge but that if the facts warrant it the heirs may maintain an action in the proper forum against the administrator to recover their damages.

The item of interest with which he was surcharged, however, must be considered separately. This was a proper subject of inquiry and if the facts warrant it the order surcharging the amount of interest paid on this note must be upheld. But unless the administrator had funds on hand sufficient to discharge the debts of the estate which he left idle and not earning any income it would not be proper to now surcharge him with this interest. In determining the question of whether or not he had sufficient funds we must leave out of consideration the fund on deposit in Bishop & Co.'s bank for the reason that the administrator has been surcharged with this fund together with legal interest thereon from the inception of the trust and to also surcharge him with this interest, if the fund on deposit in Bishop & Co.'s bank was the only one in his possession with which he could discharge the debts, would be equivalent to requiring him to pay double interest on this amount. We understand it to be the contention of counsel for the contestants that he had sufficient funds independent of the account with Bishop & Co. with which to discharge the debts. At the inception of the trust the administrator reported no mon-

ey on hand. It afterwards developed that there was a very small amount on deposit in the First Bank of Hilo, Limited (about $35), which the administrator never discovered. Collections during the first year of the administration amounted to $6704.78 and expenditures, the most of which are undisputed, amounted to $2646.87, leaving a balance on hand at the end of the first year of $4055.91. During the second year of the administration the collections amounted to $694.45 and the disbursements amounted to $583.90, which added to the balance carried over from the first report makes a total at the end of the second year of $4166.46. During the third year of the administration the collections amounted to $5093.63 and the disbursements amounted to $582.05, which added to the amount carried over from the second account gives a balance at the end of the third year of $8678.06. This is the first time that the assets of the estate were sufficient to pay even the principal amount of the note in question and if the interest theretofore paid by the administrator had been charged in this account the estate would have still been insufficient to meet this note. During the fourth year of the administration the collections were very small and the disbursements, if we consider those only which are not attacked in this proceeding, were greater than the collections, so that at no time does it appear that the estate had sufficient funds outside of those on deposit with Bishop & Co. with which to meet the demand of the bank, and it is disclosed by the record that at least some of the funds on hand were invested and the estate credited with the interest which they produced.

We think therefore that the administrator having been surcharged with interest on the only fund out of which he could have discharged the debts it was error to require him to refund the whole amount of interest paid. This question does not appear to have been considered

on the proper basis. The only proper basis for such a surcharge is legal interest on such sums as the administrator permitted to remain idle when they should have been invested or applied to the payment of the debts thereby reducing the interest payments to be made out of the estate.

In lieu of a blanket surcharge of the whole amount of interest paid out the inquiry should have been directed to an ascertainment of the amount of funds, if any, which the administrator permitted to remain idle when they should and could have been invested or applied to a reduction of the interest-bearing debts of the estate. No such inquiry having been made we think that this branch of the case should be further investigated and if upon such inquiry it appears that the administrator has failed in his duty in this respect a proper surcharge can be ordered.

Assignment of error No. 12. The judge erred in his decision of February 7, 1921, in that he surcharged Solomon K. Lalakea with the sum of $2850 on account of the fee paid to Mr. W. H. Smith. The facts are that when Mr. Lalakea died the so-called bank cases and county cases, involving large amounts, were pending against him. He had employed Mr. W. H. Smith of Hilo, and Mr. E, C. Peters of Honolulu, to represent him in the defense of these cases. He had paid Mr. Smith $985 and Mr. Peters $2000 in fees on account of these cases prior to his death. After his death his administrator was substituted as defendant in all of these cases and the same attorneys continued to represent him but apparently without any agreement as to fees. The administrator paid Mr. Peters a further fee of $500. He also paid Mr. Smith a further fee of $2700 in the bank cases and $1500 in the county cases, making a total of $4200 paid to Mr. Smith by the administrator in these two sets

of cases, and together with the $985 paid to him by Mr. Lalakea, his fees in these cases totaled $5185. The county cases were never tried and were finally dismissed. One of the bank cases was tried in the circuit court and appealed to this court where the decision was favorable to the administrator. This decision settled the rights of the parties in all of the remaining bank cases and they were dismissed. No evidence was taken at the hearing before the probate judge as to the character or value of the services rendered by Mr. Smith in these cases. In the hearing before the master the administrator filed memoranda, apparently taken from an account book, showing the fees paid to both Mr. Peters and Mr. Smith by the deceased. He also filed an affidavit by Mr. Smith, all of which the master has attached as exhibits to his report. The memorandum of fees paid Mr. Smith by the deceased is as follows: "May 23, 1913, Retainer in action County of Hawaii $100; June 14, 1913, Retainer in County case $85; January 1, 1914, Retainer in County of Hawaii v. T. K. Lalakea $500; April 5, 1915, On a/c of retainer $200; April 20, 1915, Balance on a/c of retainer $100." Mr. Smith's affidavit is quite lengthy and contains a history of the litigation together with his and Mr. Peters' connection therewith. He treats the county cases and the bank cases separately. As to the county cases he says that more than $75,000 was involved and that a vigorous effort was being made by Mr. Breckons, special counsel for the county, to establish Mr. Lalakea's liability therefor; that there was no issue of fact in these cases, the questions being altogether questions of law; that he made only a nominal charge for retainer in these cases; that E. C. Peters of Honolulu was also retained in these cases and was paid at the time of being retained a very substantial fee; that after an exhaustive study of the questions by himself and Mr. Peters a line of defense was agreed upon,

which he sets out in his affidavit. He makes no state-
ment as to the amount of time devoted to the county
cases, but he concludes his statement as to the county
cases by saying that in his opinion his services and Mr.
Peters' services were very nearly of the same value al-
though he being at the seat of conflict, so to speak, spent
considerably more time on various phases of these matters
than did Mr. Peters and that the charge made against
the estate is a reasonable charge whether the same as
that made by Mr. Peters or not, and that if it errs in
any respect it is in being too small rather than too large.
As to the bank cases he says that he had almost exclusive
charge of these cases and developed practically alone the
four theories of defense upon which these cases were won;
that Mr. Peters attended at the trial of the case on the
facts, which were undisputed; that the trial lasted about
one day in which Mr. Peters took the lead, but at the
argument of the case before the circuit court Mr. Peters
was not present and took practically no part in the de-
velopment of the law of the case either at that time or
before or after. He then sets forth the facts on which
these cases are based after which he refers to his brief
filed in the supreme court and makes it a part of his
affidavit. He says that the brief represents the work of
more than four years on his part practically unaided;
that by this he means that he spent more time and study
on the various phases of these cases than upon all other
law work combined during that period; that it would be
difficult for him to say how many hours, days, weeks or
months of continuous work this time would represent
but that six months of continuous work for the usual
number of hours per working day would be within the
facts. He next says that he does not know and is not
interested in the amount of fees charged by Mr. Peters
in the bank cases but that his own services are worth at

least the charge made by him considering the amount involved in the cases, the difficulty of the law involved and the time spent. As to results he says that he has no hesitation in saying that he believes the services rendered by him saved T. K. Lalakea and his estate more than $40,000. He concludes his affidavit with the suggestion that the question of whether or not these fees or any portion of them should be charged by the administrator against the estate should not be determined at this time for the reason that the administrator in his individual capacity claims title to most of the property which would have had to be sold to pay these claims had the plaintiff succeeded, and he maintains that if the heirs prevail in their suit to set aside the deed under which the administrator claims the estate should pay the fee and that if the administrator prevails he would be the person chiefly benefited by the services and should therefore pay. Neither the master nor the probate judge makes any reference to this suggestion but both have shown their disregard of it—the master by recommending the disallowance of a portion of the fees and the probate judge by ordering the disallowance.

The judge has said in his decision that he is familiar with the facts upon which Mr. Smith's affidavit is predicated but he makes no findings of fact contrary to those recited by Mr. Smith except to say that the facts in the bank cases were not admitted and that the county cases involved $56,723.20 instead of more than $75,000 as stated by Mr. Smith. So far as the facts are concerned then we think it may be said that they are substantially as stated by Mr. Smith in his affidavit. The law applicable to the allowance by a probate judge of fees paid by an administrator to an attorney is well settled and a very clear statement of it is to be found in 24 C. J. 103, 104, where it is said: "In order to entitle an executor or an admin-

istrator to credit for counsel fees and other expenses of litigation his expenditures must be reasonable, and what is a reasonable amount in any particular case is a matter resting within the discretion of the court, which should not be governed absolutely by the opinion of professional men, the charge made by the counsel or the contract of employment, but should exercise its own fair judgment and fix the amount allowable with reference to the labor, skill and care required, the value of the estate, the advantages gained or sought by the services or litigation and the good faith and reasonable prudence shown by the representative who claims the allowance."

The law which should govern this court when the action of a probate judge in allowing or disallowing an administrator credit for such expenditures comes before it is also well settled and is to the effect that such action will not be disturbed unless it clearly appears that there has been an abuse of discretion. It therfore remains for us to determine whether or not the probate judge in this case has abused his discretion in disallowing $2850 of the fees paid to Mr. Smith by the administrator. The memorandum of fees paid to Mr. Smith shows that he was retained approximately two years prior to Mr. Lalakea's death and the last item contained in the memorandum shows a payment only a few days prior to his death which purports to be a final payment on account of retainer. If the final payment made by the deceased as shown by the memorandum did not discharge the amount then owing for past services, in order to justify the payment for such services by the administrator a claim should have been duly presented in accordance with the statute. It necessarily follows that the services for which the administrator may pay with estate funds consist entirely of the services rendered after Mr. Lalakea's death. It can be gathered from Mr. Smith's affidavit that ap-

proximately all of the work in the county cases was done prior to Mr. Lalakea's death, for he says that he and Mr. Peters after an exhaustive study of the law agreed upon several lines of defense, one of which was permitting the county to take a judgment upon one of the small claims and to have Mr. Lalakea pay that judgment in order that he might be in a position to plead a splitting of the cause of action. This program, he says, was carried out and a small judgment paid by Mr. Lalakea. From that time on until they were dismissed there does not appear to have been anything done in these cases. Under these circumstances we think any substantial charge against the estate for services in the county cases would be improper.

The bank cases present a different aspect. A great deal of work was done on these cases by Mr. Smith after Mr. Lalakea's death. These services proved to be very valuable to the estate and should of course be paid for by the estate. Mr. Smith's fees in the bank cases total $2700 unless it be that the last two items in the memorandum totaling $300 were paid on account of these cases. Considering the amount of labor required and the advantages gained by the estate through this service we are unable to see how it can be said that this constituted an unreasonable charge. In our opinion the administrator should have been permitted to charge the estate with all of the fees paid to Mr. Smith except the $1500 paid on account of the county cases. This latter amount we think should be disallowed.

Assignment of error No. 10. The judge erred in his decision of February 7, 1921, in that he surcharged Solomon K. Lalakea with the sum of $806.28 on commissions. This is the entire amount of commissions retained by the administrator and the probate judge having ordered his discharge for failing to properly perform the duties of his office surcharged him with the full amount of com-

missions retained. Counsel for the administrator urge, first, that the court was without power under the statute to disallow the commissions except so far as they may have been erroneously computed by the administrator, if there was any error in their computation, and second, even if the court had the power to disallow commissions no just ground existed for disallowance in this case. They admit that their first proposition is in conflict with the decisions of this court beginning with *Estate of Akana,* 11 Haw. 420, where it was held that statutory commissions are provided for the proper and faithful execution of trusts and when an administrator does not comply with the duties devolved upon him by the appointment he is not entitled to commissions. The above holding has been reiterated several times by this court and various applications of it made. See *Estate of Alina,* 13 Haw. 388; *Guardianship of Isaac Kaiu,* 17 Haw. 517. Under these circumstances we do not feel inclined to reexamine the question. We think, however, the holding is supported both by reason and the great weight of authority.

Counsels' second contention is likewise without merit. The matters already discussed in this opinion and which made this litigation necessary are alone sufficient to support the surcharge. They were deemed sufficient by the probate judge to order the administrator discharged from his office and the administrator has concurred in that order by not appealing therefrom. If this is not a proper case for refusing the statutory commissions it would be difficult to imagine one where such action would be proper.

Assignment of error No. 5. The judge erred in his decree of February 8, 1921, whereby he allowed Messrs. Russell & Patterson, attorneys for Lily Hewahewa and Hannah Makainai, a fee of $900. The decree provides

that "Russell & Patterson, attorneys for Hannah Makainai, George Lalakea and Lily Hewahewa be and they are hereby allowed the sum of $900 as and for the value of their services performed in this matter for and in behalf of said estate, and the administrator *de bonis non* of said estate is hereby authorized to pay to said Russell & Patterson the said sum of $900." The objection urged by counsel to this fee is in effect that the court was without authority to allow it. In the course of their argument they say that there are eight undivided shares in this estate, of which the parties represented by Messrs. Russell & Patterson own three, the administrator one, and the owners of the other four took no part in the proceeding; that there is nothing to indicate that those who took no part in the proceeding consider themselves in any way benefited by the activities of these attorneys; that it is possible if they had been asked for their opinion they would have said that they preferred that Messrs. Russell & Patterson leave the estate to its fate and that the plaintiff in error so far as his interest as an heir is concerned most decidedly objects to having that interest decreased by his pro rata of $900 or any other sum for the purposes specified in the decree. Under this state of facts it is claimed that the court was without authority to allow said attorneys a fee to be paid out of the estate.

In *Trustees* v. *Greenough,* 105 U. S. 527, at 532, it is said: "It is a general principle that a trust estate must bear the expense of its administration. It is also established by sufficient authority that where one of many parties having a common interest in a trust fund, at his own expense takes proper proceedings to save it from destruction and to restore it to the purposes of the trust, he is entitled to reimbursement either out of the fund itself or by proportional contribution from those who accept the benefit of his efforts." In *Hobbs* v. *McLean,*

117 U. S. 567, at 582, it is said: "When many persons have a common interest in a trust property or fund and one of them for the benefit of all and at his own cost and expense brings a suit for its preservation or administration the court of equity in which the suit is brought will order that the plaintiff be reimbursed his outlay from the property of the trust, or by proportional contribution from those who accept the benefits of his efforts. * * * But where one brings adversary proceedings to take the possession of trust property from those entitled to it, in order that he may distribute it to those who claim adversely, and fails in his purpose, it has never been held, in any case brought to our notice, that such person had any right to demand reimbursement of his expenses out of the trust fund, or contribution from those whose property he sought to misappropriate." The principle has been recognized by this court in *Evans* v. *Garvie*, 23 Haw. 694. We are unable to see any difference in principle between an estate held by an administrator and a trust estate of any other character as affecting the allowance of costs and expenses incurred in the administration or preservation of the estate. In *Bean* v. *Bean*, 74 N. H. 404, the court in allowing one of the beneficiaries of the estate his expenses incurred in litigation with the executrices who claimed portions of the property adversely to the estate said: "As executrices it was the duty of the appellants to protect and conserve the estate committed to their care, but as they were personally interested in the property in question, claiming adversely to the estate to be the absolute owners of it, the interests of the estate in it were in fact protected by the intervention of one or more of the legatees, the appellees. That such intervention was reasonably necessary and prudent the result of one of the suits seems to establish. *Bean* v. *Bean*, 71 N. H. 538. The result of that suit added to the estate

or trust fund certain property which the executrices claimed to own individually. A finding by the superior court that the appellees are equitably entitled to reasonable compensation on this account out of the trust fund presents no error of law." See also 11 R. C. L. 237. The authorities cited we think sufficiently establish the right of the heirs who contested with the administrator the correctness of his accounts and his claim of ownership to portions of the estate to have their reasonable expense of that contest allowed out of the estate. It follows that the order in question presents no error unless the further contention of the plaintiff in error, that the order if proper at all should have been in favor of the parties themselves instead of directly to the attorneys, is well taken. We think it would have been the better practice for the allowance to have been to the parties instead of to the attorneys, but we know of no legal objection to the order in this forum. As was said in *Central R. R.* v. *Pettus,* 113 U. S. 116, at 124: "When an allowance to the complainant is proper on account of solicitors' fees it may be made directly to the solicitors themselves without any application by their immediate client." Under the circumstances we see no reason for disturbing the order authorizing the payment of a fee direct to the attorneys out of the estate.

Assignment of error No. 4. The judge erred in that he did in his decision filed February 7, 1921, and in his decree filed February 8, 1921, allow Norman D. Godbold, Esq., a fee of $1200 for alleged services as master to examine and report upon the accounts of Solomon K. Lalakea, administrator of the estate of T. K. Lalakea, deceased. Having already determined that the appointment of Mr. Godbold as master was a proper exercise of the authority vested in the probate judge, he is as a matter of course entitled to compensation for the services

performed under that appointment. . The only question to be determined under this assignment of error is the reasonableness of the fee allowed. Evidence was taken at the hearing as to the value of the services performed. Mr. Godbold told something of the amount of time required in gathering the information and examining the law preparatory to making the report which was filed. Mr. Russell testified that he had examined the master's report on file, had had a conversation with Mr. Godbold as to the amount of work done and that from these facts and his own knowledge of the amount of work required to make the report he would say the services were reasonably worth from $1000 to $1500. The law which we have already cited in connection with our discussion of assignment of error No. 12 applies. In fixing the amount of the fee the probate judge should not be governed absolutely by the opinion of professional men and should exercise his own fair judgment and fix the amount allowable with reference to the labor, skill and care required, the value of the estate, etc. The judge has said in his decision that the report of the master materially aided in the disposition of the matters under investigation. Under these circumstances we are unable to say that the fee allowed is excessive although if the matter were originally before us we might not have allowed as large a fee as the one in question.

The decree is in part affirmed and in part reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*C. S. Carlsmith* (*W. H. Smith* and *Peters & Smith* with him on the brief) for plaintiff in error.

*B. S. Ulrich* (*Russell & Patterson* and *Thompson, Cathcart & Lewis* on the brief) for contestants.