## IN RE ESTATE OF FAYETTE S. BUSH.

### CARL F. BENJAMIN, ADMINISTRATOR DE BONIS NON, APPELLANT, V. GALE BUSH ET AL., APPELLEES.

FILED MAY 23, 1911. NO. 16,456.

1. **Wills: SPECIFIC LEGACIES.** A bequest of "All money that I may have in the Omaha National Bank of Omaha, state of Nebraska, except therefrom the sum of fifteen hundred ($1,500) dollars," which was otherwise disposed of by the will, is a specific legacy. Three other bequests, in form, "I direct that five hundred (500) dollars of said money (hereinbefore referred to in the Omaha National Bank) be paid to my grandson," are also specific legacies.

2. **Executors and Administrators: DISCHARGE OF DUTIES.** "The care, prudence, and judgment which the man of fair average capacity and ability exercises in the transaction of his own business furnishes the standard to govern an administrator in the discharge of his trust duties." *Dundas v. Chrisman,* 25 Neb. 495.

3. ———: ALLOWANCE FOR COSTS AND ATTORNEY'S FEES. Where an ancillary administrator expends money for court costs and attorney's fees in good faith in an honest effort to preserve a part of the assets, he is entitled to recover for such expenses if for any sufficient and well-founded reason the claim is settled by a reasonable compromise, even though the action and the compromise were not previously authorized by the county court.

4. ———: USE OF MONEY OF ESTATE: INTEREST. "It is a settled principle of law that, where an administrator mingles the funds of the estate with his own and uses them for his own benefit, he is chargeable with interest." *Westover v. Carman's Estate*, 49 Neb. 397.

APPEAL from the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. *Reversed with directions.*

*Baldrige, De Bord & Fradenburg* and *Fremont Benjamin*, for appellant.

*A. S. Churchill* and *John G. Kuhn, contra.*

LETTON, J.

Fayette S. Bush died April 24, 1907, near Los Angeles, California. In his will he made the following provisions: "Fourthly: I give and devise to my son, Ralph E. Bush, of Omaha, State of Nebraska, all those certain lots, pieces or parcels of land situate lying and being in the cities of Omaha and South Omaha, County of Douglas, State of Nebraska, that I might have at the time of my death. Also one half (½) interest in the life insurance policy I have in the Bankers Life Association of Des Moines, State of Iowa, all money that I may have in the Omaha National Bank of Omaha, State of Nebraska, except therefrom the sum of fifteen hundred ($1,500) dollars which said sum of fifteen hundred ($1,500) dollars, in said Omaha National Bank, shall be divided and distributed as hereinafter directed.

"Fifthly: I direct that five hundred ($500) dollars of said money (hereinbefore referred to in the Omaha National Bank) be paid to my grandson Gale Bush, five hundred (500) dollars to my grandson Eldon Bush, and five hundred (500) dollars to my granddaughter Fay Bush, and the said several sums of five hundred dollars shall be placed in the said Omaha National Bank of Omaha, Nebraska, on interest during the minority of said grandchildren and as each one comes to the age of their ma-

jority, the five hundred dollars so placed to each one's credit with the accumulated interest thereon shall be paid to said grandchild.

"Lastly, I hereby nominate and appoint my wife, Effie B. Bush, the executrix of this my last will and testament and it is my wish that she be allowed to act as such executrix without bond, and hereby revoke all former wills by me made."

The money on deposit in the Omaha National Bank was evidenced by a negotiable certificate of deposit which came to the hands of his executrix. Soon after the death of the testator, Nellie Bush, the mother and guardian of the legatees Gale Bush, Eldon Bush, and Fay Bush, who resided with these minor children in the state of Iowa, went to the office of Fremont Benjamin, an attorney at law in Council Bluffs, Iowa. She told him of the death and of the will and legacy. She also said she had no confidence in the executrix, and was afraid that, if she was permitted to retain the money, her children would never receive it. She desired to know if she could not as guardian receive the money. Mr. Benjamin undertook to accomplish this. He thereupon began proceedings for the probate of the will in Douglas county, Nebraska, where certain real estate of deceased was situated, and on its probate procured the appointment of an administrator with the will annexed. He then demanded the money on deposit from the Omaha National Bank, and notified it not to pay it to the California executrix. He next began a suit in equity in the district court for the administrator against the executrix and the Omaha National Bank to recover the money on deposit. The bank appeared and demurred to the petition, and Messrs. Crane & Boucher appeared as attorneys for the executrix and filed a general denial. Pending the proceedings, such correspondence was had with the executrix and her attorneys in California that afterwards at a conference in Omaha between the attorneys Crane & Boucher for the executrix, Mr. E. M. Martin, acting for Ralph E. Bush, and Mr. Benjamin for the administrator, it was agreed

that the certificate of deposit be delivered to the administrator on the payment of their attorney fee of $50 to Crane & Boucher and of the costs of the case. The action was dismissed as to the bank, and a judgment by consent entered in favor of the administrator and against Effie B. Bush, executrix, for the certificate of deposit. The certificate was then delivered to the administrator, and the money on deposit, which with interest at that time amounted to $1,981.91, was on the 10th day of January, 1908, paid to him by the bank.

On April 11, 1908, Carl F. Benjamin, administrator, filed his final report in the county court of Douglas county as such administrator, setting forth the facts as to the suit against the executrix and the settlement. He also recited that it was agreed by E. M. Martin, acting for Ralph E. Bush, that there should be paid out of Ralph E. Bush's share $6.81 on Crane & Boucher's fees and $6.77 costs of suit; that $50 had been paid to Crane & Boucher as attorney fees, $48.40 court costs and expenses, and $468.43 to Ralph E. Bush, leaving $1,414.08 in his hands. He asked for an allowance of $62.50 statutory fee from the $1,500 devised the minors. He also asked for a reasonable attorney's fee to be paid Fremont Benjamin for services as attorney. Objections were filed to this report by Nellie Bush, as guardian of the minors, in substance alleging that the $500 legacies were specific in nature; that the money by the terms of the will was to be left in the Omaha National Bank, and the administrator had no right to it, and had no authority to make the compromise. She objected to the allowance of any compensation to the administrator, or to the payment of any costs or attorney's fees, and prayed for an order on the administrator to pay over the full amount of $1,500, with 7 per cent. interest.

An amended report was then filed by the administrator, setting out the facts more specifically, and with this was filed the itemized bill of Fremont Benjamin for $175 for services as attorney. Amplified objections were filed to the report as amended by John G. Kuhn, guardian *ad*

*litem* for the minors. The county court found that the $500 bequests were specific, and that no part of the costs should be charged against them; that there was no necessity for the suit against the executrix and the Omaha National Bank; that it was not authorized by the court, and no allowance should be made for costs and expenses connected with it; that the administrator is entitled to a commission of $74.55, the attorney a fee of $35, and the guardian *ad litem* a fee of $25; that the administrator should have in his hands $1,649.90 in cash. It was ordered that the administrator pay $500, with any interest said sum may have earned, to the guardian for each minor.

On appeal to the district court, that court made substantially the same findings as the county court; found in addition that the executrix was ready and willing to carry out the provisions of the will, that on January 10, 1908, the administrator did not deposit the money in the Omaha National Bank as required by the will, but diverted it; found that the claim for payment to Ralph E. Bush should be allowed in the sum of $299.31, and the remainder disallowed. It was ordered that the administrator pay into county court for the use of each of the minors $500, with 3 per cent. interest from January 10, 1908 (the date of withdrawal from the bank), to the date of the decree in the county court, and with 7 per cent. interest from that date; that the fees of the guardian *ad litem* be fixed and allowed by the county court as part of costs of administration, and that the costs of the appeal be paid by the administrator. From this judgment this appeal has been taken.

It was argued by counsel for the guardian *ad litem* that the legacies to the minors are specific legacies, and that of Ralph E. Bush a general one, and that, if so, the entire amount bequeathed to them must be paid over for the children without deduction for costs or expenses. It is clear that the legacies to the children are specific in their nature, but that to Ralph is equally so. The authorities are uniform that such bequests as "All the books in my

library," "All the horses in my stable," "All the furniture in my house," "All the money in a certain bank" are specific. Note to *Snyder's Estate,* 11 L. R. A. n. s. 49, 55 (217 Pa. St. 71) ; 2 Redfield, Law of Wills (2d ed.) pp. 134, 135 ; 2 Williams, Law of Executors (7th Am. ed.) p. 440, and note; *Perkins v. Mathes,* 49 N. H. 107; 7 Words and Phrases, p. 6600. Under the facts presented, we think all four of these legacies were specific with respect to the general estate of the deceased. They must be considered then with respect to each other as of the same rank, and, while the rule of exoneration will apply as against the general estate, no priority exists in favor of one over another.

The principal question presented is whether the court erred in refusing to allow the administrator for expenses incurred in the action to recover the certificate of deposit. It is the duty of a guardian to exercise due and proper care to protect and conserve the estate of his ward. In the mind of Nellie Bush, the mother of the children and their authorized guardian, there was what seems from her evidence to have been a well-grounded fear that if the fund was permitted to remain in such condition that the executrix in California, whom the will provided should be appointed without bond, could withdraw it, there was grave danger that it might be lost to the children. This being so, she did the natural and proper thing, consulted a reputable attorney and laid the facts before him for the purpose of taking steps to effectually secure the legacies. The advice which the attorney gave her under this statement of fact seems to have been sound. He proceeded to secure the appointment of an administrator with the will annexed, and afterwards took steps to prevent the payment of the fund by the Omaha National Bank to the executrix. On the same day, July 12, 1907, he wrote to the executrix, or her attorney, endeavoring to have her turn over the certificate of deposit without legal proceedings. In response to this letter, her attorney replied that she was desirous of having the estate settled as promptly and amicably as possible, but that he was of opinion that

the county court of Douglas county had no jurisdiction over the money in the bank, that the California court alone had jurisdiction, and that any payment she might make to the Nebraska administrator would be void.  After the receipt of this letter, Mr. Benjamin began an action in the district court to impound the fund in the bank and for the delivery of the deposit, which suit was subsequently compromised as set forth in the administrator's report.

The administrator had not been previously authorized by the county court to bring this suit or to compromise the matter.  For his own protection an administrator should always apply to the county court for leave to compromise and settle actions by him brought with respect to the recovery of assets of the estate, and should receive the sanction of the court before proceeding; otherwise, he takes the risk upon himself of being comp:elled personally to respond to the estate for the full claim and for the costs and expenses.  If the circumstances at the time the suit was begun were not sufficient to justify a prudent and cautious man in undertaking its prosecution, or the compromise is one which men of average business ability would not have made, the administrator cannot be allowed credit for the costs, expenses or deduction.  Schouler, Wills and Administration, secs. 298-387, and note.  The same rule applies with reference to such matters as applies to all other business transactions of an administrator with reference to the estate.  Good faith and diligence are required of him.  If in the exercise of sound reason under the circumstances of the case it would seem to an ordinary, prudent and cautious man necessary for the best interests of his trust to act as he did, the compromise should be approved by allowing the claims caused thereby in his final report, even though subsequent events should show that the action was unnecessary.  *Dundas v. Chrisman*, 25 Neb. 495; *McDowell v. First Nat. Bank*, 73 Neb. 307; *In re Estate of Bullion*, 87 Neb. 700; 2 Woerner, American Law of Administration (2d. ed.) secs. 323, 324; 2 Perry, Trusts and Trustees (6th ed.) sec. 916.

It is not to be presumed that such officers are infallible, nor are they to be charged with greater wisdom than that of ordinary, prudent persons in the conduct of such matters. The interests of minors must be protected by ordinary mortals, and a rule which required more than ordinary wisdom or foresight on the part of trustees·would by its harshness lead probably to worse evils than the present common-sense doctrine. It would seem that any prudent and cautious attorney acting in behalf of these minors, after their guardian and mother had told him (as Mrs. Bush testifies she told Mr. Benjamin) that she had no confidence in the executrix, that she was afraid she might squander the money in California, that in some matters she had not been strictly honest, that, if the money was administered in California, she did not expect to get any of it for the children, and for that reason she wanted to get the money here under her control, would have advised and taken legal steps of some nature to preserve this fund. We are of opinion that both Mrs. Bush, as guardian, and Mr. Benjamin, as attorney, were justified in proceeding in Nebraska as they did with respect to this fund, rather than in California. Whether the steps taken in all respects were in accordance with strict legal principles is not so material here as whether they were justified by the apparent necessity. If no proceedings had been brought, and Mrs. Bush's fears had proved to be well founded by the executrix drawing the money and squandering it, would she not have been subject to censure if she had taken no action in behalf of her wards? Whether an ancillary administrator has the legal right to impound such assets as these is not the question. It is rather, if he does so in good faith, shall he recover any reasonable sums paid out in so doing? We are all of the opinion that the compromise with the attorneys for the executrix by which the control of·the fund was transferred to the local administrator was not unfair, unjust to the minor legatees, or improvidently made. The general rule in equity is that, where it is necessary to incur costs or expenses in order to

protect a fund in which several are interested, the necessary expense shall be borne by the fund and prorated in proportion to the interests of the persons owning the fund. 2 Perry, Trusts and Trustees (6th ed.) sec. 910; *Marshall v. Piggott,* 78 Neb. 722. We are therefore of opinion that the entire costs and expenses of procuring the fund to be brought under the control of the administrator in this state should be prorated between the various owners in proportion to their interest therein, and the administrator should be credited as against the minor heirs only with that proportion of the total costs and expenses which $1,500 bears to the entire fund, or, in other words, that the shares of these minors should bear no more than their proper proportion.

When the administrator received the fund, he placed it to the credit of the Benjamin Real Estate company. "It is a settled principle of law that, where an administrator mingles the funds of the estate with his own and uses them for his own benefit, he is chargeable with interest." *Westover v. Carman's Estate,* 49 Neb. 397; *In re Estate of Bullion, supra.* He is therefore liable for interest at the legal rate for all the money in his hands from the date of its withdrawal. The administrator should be credited with the costs and expenses of the administration proper in the county court, including a reasonable fee to Mr. Benjamin for his services in the matter of the claim of Crofoot & Scott, and the preparation of the necessary petitions, reports, etc., and also with the statutory allowance to the administrator. He should also be credited as against the minor legatees in the proportion that $1,500 bears to the whole amount of money in the fund when received by him with the costs and expenses in the suit in district court, etc., as set out in the administrator's report, including a reasonable attorney's fee to Mr. Benjamin for services in that matter. It appears that the administrator is a son of the attorney, barely of age. The father appears practically to have administered the estate. The amount of the statutory compensation to the

administrator under the circumstances should be applied on the attorney's compensation. The guardian *ad litem* should be paid from the minors' shares.

It being impossible to finally adjust the account in this court, the decree of the district court is reversed and the cause remanded, with directions to adjust the account of the administrator as respects the minors in accordance with this opinion.

REVERSED.