IN RE ESTATE OF JAMES H. HUNTER.
ROBERT H. HUNTER ET AL., APPELLANTS, V. JAMES D. HUNTER, ADMINISTRATOR, ET AL., APPELLEES.

FILED JULY 19, 1935. No. 29236.

530

*Will H. Thompson,* for appellants.

*Gray & Brumbaugh, contra.*

Heard before Goss, C. J., Rose, Day, Paine and Carter, JJ., and Lovel S. Hastings and Lightner, District Judges.

Hastings, District Judge.

James H. Hunter, a resident of Omaha, Nebraska, died testate on the 28th day of March, 1932. Deceased was survived by his widow, Louise A. Hunter, and his four children born to the marriage, Robert H. Hunter, Laura Hunter Howell, James D. Hunter, Frank C. Hunter, and his foster sister, Libbie Magers. The will was executed on the 16th day of November, 1925, and admitted to probate in the county court of Douglas county, Nebraska, and on June 5, 1932, James D. Hunter was appointed administrator with will annexed. Thereafter, and within the time allowed by law, the widow filed her election to take under the statute.

The estate of deceased consisted of 540 shares of stock in the City Service Company, 525 shares of stock in the Hunter Realty Company, 150 shares of common stock in the Chicago & Northwestern Railway Company, and shares of stock in the Conservative Savings and Loan Association amounting to $15,000, convertible into cash on 30 days' notice, a debt of $2,700 owing to the estate by the Hunter Realty Company, also two lots in the city of E. Las Vegas, New Mexico, and between four and five thousand dollars in cash.

On the 6th day of July, 1933, said administrator filed his final account and petition for final settlement, and for a distribution of the estate. Robert H. Hunter and Laura Hunter Howell, appellants herein, filed objections to the final account, in which it was alleged that without any authority or order of court said administrator withdrew from the Conservative Savings and Loan Association, on the 25th day of October, 1932, $15,000, which was then drawing interest, thereby said administrator lost the interest thereon in the sum of about $700, and that said ad-

ministrator should be charged with said interest. It was further alleged in said objections that, by reason of the widow having elected to take under the statute, the bequest to Laura Hunter Howell of 50 shares of stock in the Chicago & Northwestern Railway Company had failed, and that in lieu thereof she was entitled to the sum of $2,500. It was further alleged that by reason of said election of the widow the bequest of Robert H. Hunter of 100 shares of stock in the Chicago & Northwestern Railway Company had failed, and that he was entitled in lieu thereof to the sum of $5,000, and that, by the election of the widow, the devise to Robert H. Hunter of the town property in the city of E. Las Vegas, New Mexico, had failed, and that in lieu thereof he was entitled to the sum of $2,500.

The county court entered an order charging the administrator with $606 interest on the money withdrawn from the Conservative Savings and Loan Association, and decreed that a distribution could not be made under the will owing to the widow's election, except as to the legacy of $1,000 to Libbie Magers, which was ordered paid. The remainder of the estate was ordered distributed under the statute as intestate property. An appeal was taken from the decree of the county court, and on a trial in the district court the order of distribution of the county court was affirmed, except as to the interest item, which had been charged to the administrator, and this item, by the decision of that court, was reduced to $300. Robert H. Hunter and Laura Hunter Howell appealed to this court.

The principal question for consideration is the construction that should be given to the will. Without the formal part, the will is as follows:

"To my wife, Louise A. Hunter, I give and bequeath, to have and to hold forever, all of my wearing apparel, my jewels and ornaments, all our household furniture and furnishings, and the sum of one thousand dollars.

"I am the owner of five hundred twenty-five shares of Hunter Realty Company stock, and to my son Robert H. Hunter I give, bequeath and devise and to have and to hold

forever, six shares of said stock, and lots ten, eleven and twelve (10, 11 and 12) in block twenty-three (23) in San Miguel Townsite Company's Addition to the city of E. Las Vegas, New Mexico. In the event that I shall have disposed of said town property before my death then in lieu thereof I give and bequeath to my said son two thousand five hundred dollars in money.

"To my foster sister, Libbie Magers, of Brighton, Colorado, I give and bequeath the sum of one thousand dollars. If still alive at my death.

"To my aforesaid son, Robert H. Hunter, I give and bequeath one hundred shares of common stock of the Chicago and Northwestern Railway Company, which I now own, and if I shall have disposed of said stock before my death then in lieu thereof I give and bequeath to my said son two thousand five hundred dollars in money.

"The five hundred nineteen shares of said Hunter Realty Company stock I give and bequeath to my said wife for and during the period of her natural life, during which time she shall have the net earnings thereof for her own use, but she shall not encumber or dispose of any of it.

"To my son, Frank C. Hunter, I give and bequeath two hundred ten shares of said Hunter Realty Company stock, but subject to the life estate and interest therein of my wife, who is his mother; and to my son, James D. Hunter, I give and bequeath two hundred nine shares of said Hunter Realty Company stock, but subject to the life estate and interest therein of my wife, who is his mother. The remaining one hundred shares of said Hunter Realty Company stock I give and bequeath to my daughter, Laura Hunter Howell, for life, and at her death the same shall go to the surviving children of my son James D. Hunter, share and share alike, and this bequest is made subject to the life estate and interest therein of my said wife.

"This means that during her lifetime my said wife shall have the net earnings of the aforesaid 519 shares of the aforesaid stock, and that after the death of my said wife 210 shares of said stock shall go to my son Frank C.

Hunter, absolutely; 209 shares of it shall go to my son James D. Hunter, absolutely; 100 shares of said stock shall go to my said daughter, Laura Hunter Howell, for life; and at her death the said 100 shares shall go to the surviving children of my son James D. Hunter, absolutely.

"My daughter, Laura Hunter Howell, shall not in any manner encumber said 100 shares of stock, or any part of the same, and during her life, after the death of my said wife, she shall have for her own use the net earnings of said hundred shares of stock, and so that said 100 shares of said stock shall go intact to my said grandchildren after and upon the death of my said daughter.

"By net earnings is meant the amount of earnings remaining after all expenses pertaining to the operation of the business of said Hunter Realty Company are paid, including taxes and assessments, and all direct expenses and indirect expenses.

"To my said daughter, Laura Hunter Howell, I give and bequeath fifty shares of common stock of the Chicago and Northwestern Railway Company, and if I should dispose of said stock before my death then in lieu thereof I give and bequeath to my said daughter the sum of two thousand five hundred dollars.

"I have herein bequeathed to my son Robert H. Hunter one hundred shares of common stock of the Chicago and Northwestern Railway Company, and have provided that in case of disposal of said stock by me before my death that he shall have in lieu thereof the sum of $2,500 in money; in case I shall dispose of said shares of stock during my lifetime then I give and bequeath to my said son Robert H. Hunter the further and additional sum of two thousand five hundred dollars, and so that if he shall not receive said 100 shares of railway company stock he shall receive five thousand dollars in money in lieu of said stock.

"In paying the money bequests herein and hereby made none of the Hunter Realty Company stock shall be used, or disposed of, and if there shall not be sufficient property

belonging to my estate at my death, aside from Hunter Realty Company stock, to pay the money bequests in full then the same shall be proportionately reduced to accord with the deficit.

"All the rest, remainder, and residue of my property, personal, real, or mixed, and wherever situated, I give and bequeath to my aforesaid three sons, one daughter, and my wife, and share and share alike, and to have and to hold forever.

"The life estates in said Hunter Realty Company stock, and hereby created and willed, shall carry the voting privilege thereof, which means that while my said wife survives me she shall vote all of said 519 shares, and after her death my daughter shall, while she lives, vote the 100 shares.

"It is my very earnest desire and wish that the business of the Hunter Realty Company shall be continued after my death, during the lifetime of my widow, and I hope also that after the death of my widow the said business will still be continued until my aforesaid grandchildren come into absolute ownership of the one hundred shares of the stock willed to them."

It appears from the evidence that the Hunter Realty Company, in which the testator owned the shares of stock disposed of by his will, is a corporation organized by the testator some 27 years prior to his death. At the time of testator's death the corporation owned an apartment house, known as the "Hunter Apartment," a hotel, known as the "Hunter Inn," and adjacent thereto a valuable business corner which at that time was being improved. Of the 1,000 shares of the Hunter Realty Company, 997 were outstanding, with ownership as follows: Testator 525, his widow 161, Robert H. Hunter 244, Laura Hunter Howell 61, Frank C. Hunter 2, and James D. Hunter 4. At the time of the death of James H. Hunter and since that time the business of the Hunter Realty Company has not yielded any net income.

It is the contention of counsel for appellees that the will and the surrounding circumstances disclose an intention

on the part of the testator to perpetuate the Hunter Realty Company as a family corporation, a purpose as to the final ratio of stock ownership among his 4 children, and a desire for an equal division of his entire estate among them, and that by the election of the widow to take under the statute such manifest plan and purpose of the testator had been so changed or destroyed as to render his will inoperative.

By the widow's election each of the legacies provided for in the will, with the exception of the legacy to Libbie Magers, was reduced one-third, and the devise of the New Mexico town lots one-half.

We think that the will indicates a desire on the part of the testator that the Hunter Realty Company be perpetuated as a family corporation during the lifetime of his wife, and until the time his grandchildren, referred to in the will, should come into absolute ownership of the shares bequeathed to them. The ratio of stock ownership in said corporation, as between his said 4 children, was not changed by the election of the widow.

We have held: "Where a widow elects to renounce the provisions made for her in the will of her deceased husband and take under the statute, such election does not render the will inoperative. As between other persons it will be enforced as nearly as may be in accordance with the intention of the testator." *In re Estate of Grobe,* 101 Neb. 786.

It is only when the subject-matter upon which the will was intended to operate has been so changed and the manifest plan and purpose of the testator has been effectually destroyed by the election of a surviving spouse to take under the statute, that a will will be declared inoperative. *Fennell v. Fennell,* 80 Kan. 730.

The testator is presumed to have known the law, and that his widow might lawfully exercise her right to take against the will. 28 R. C. L. 233, sec. 193; *Disston's Estate,* 257 Pa. St. 537, L. R. A. 1918B, 62; *Vance's Estate,* 141 Pa. St. 201, 12 L. R. A. 227, 23 Am. St. Rep. 267;

*Crocker v. Crocker,* 230 Mass. 478, 5 A. L. R. 1617; *Upham v. Emerson,* 119 Mass. 509; *Sawyer v. Freeman,* 161 Mass. 543. To the same effect see *Hill v. Hill,* 90 Neb. 43.

Nothing appears in the will from which it may be inferred the testator would have made any different disposition if he had known his widow would exercise her right to take under the law. The effect of the election of the widow was to reduce by one-third each bequest of the shares of stock in the Hunter Realty Company and of the shares in the Chicago & Northwestern Railway Company. The legatees to whom he bequeathed the shares of stock in the Hunter Realty Company took in the same ratio, as among themselves, as they would have taken if the widow had taken under the will. The legatees of the Hunter Realty Company stock and the legatees to whom the stock of the Chicago & Northwestern Railway Company was bequeathed took ratably the same as they would have if the widow had not exercised her election.

Under this construction, the legatees to whom he bequeathed the shares of stock in the Hunter Realty Company take as follows: Robert H. Hunter, to whom was bequeathed 6 shares of stock, receives 4; Frank C. Hunter, to whom was bequeathed 210 shares, receives 140; James D. Hunter, to whom was bequeathed 209 shares, receives 139 1/3, and Laura Hunter Howell, to whom the net income from 100 shares was bequeathed, receives a like income from 66 2/3 shares during her life, and on her decease the ownership thereof vests in the surviving children of James D. Hunter. With the shares so distributed under the will, the expressed desire of the testator that the business of the corporation be continued until his grandchildren come into absolute ownership of the shares of stock bequeathed to them in remainder may be observed and carried out. Under the order of distribution of the trial court, Laura Hunter Howell receives 87½ shares of the stock absolutely, and the children of James D. Hunter are disinherited, a result which was not intended by the testator.

It is the contention of counsel for appellant that, since the shares of stock of the Chicago & Northwestern Railway Company bequeathed to Laura Hunter Howell and Robert H. Hunter have been reduced one-third by the widow's election, under the terms of said bequests, they are entitled to receive in lieu of the stock bequeathed to them $2,500 and $5,000 respectively. The condition on which they were to receive said sums of money in lieu of said stock bequeathed to them was the testator's disposition of said stock during his lifetime. Testator owned all of this stock at the time of his death, and the condition on which they were to receive money in lieu of stock does not attach. Under said bequests, as reduced by the widow's election, Laura Hunter Howell receives 33 1/3 shares, and Robert H. Hunter receives 66 2/3 shares.

The same contention is made in relation to the devise of the town lots in New Mexico to Robert H. Hunter. In the devise of the property to him it is provided that, if the testator disposed of the same before his death, then in lieu thereof Robert was given the sum of $2,500. Testator did not dispose of the property during his lifetime, and the election of the widow does not entitle him to receive $2,500 in lieu thereof, but he takes the interest remaining after the widow's election.

Under the will Libbie Magers is entitled to the $1,000 bequeathed to her.

After the payment of the debts and expenses of administration, the four children of testator are entitled to share equally in the remainder of his estate as diminished by the widow's election.

On October 25, 1932, the administrator converted the $15,000 of stock in the Conservative Savings and Loan Association into money without an order of the court therefor. It appears that interest or dividend on said stock was payable semiannually on the 1st day of January and the 1st day of July each year, and that by the withdrawal of the money the interest or dividend thereon from July 1, 1932, to January 1, 1933, was lost to the estate. It is ad-

mitted by the administrator in his answer that, if the money had remained in said company from July 1, 1932, to January 1, 1933, the interest or dividend would have amounted to $606. The trial court found that by waiting two months more the administrator would have realized the sum of $300 more in interest, and that there was no legal cause why said administrator should withdraw said money and lose such interest, and adjudged that his account should be charged with $300.

The court found and adjudged that subsequent to said date a justifiable cause arose for withdrawing said fund, and the administrator should not be charged with interest subsequent to January 1, 1933. The administrator has not filed a cross-appeal from the judgment charging him with $300 interest and the question whether said sum was rightfully charged to him is not here for review.

Counsel for appellants contends that the trial court erred in not charging the administrator with a further sum of $300 interest from January 1, 1933, to July 1, 1933. Counsel seems to base this claim solely upon the ground that the administrator failed to procure an order from the county court permitting the withdrawal of said money. It is insisted that such an order was required by the provisions of section 30-1404, Comp. St. 1929. For his own protection the administrator should have applied to the county court for leave to withdraw this fund, and should have received the sanction of the court before proceeding to do so. The fact that he did not make such application and obtain an order of the county court does not render him liable, if the transaction was in good faith on his part, without profit to himself, and he exercised the care, prudence and judgment a man of fair average capacity and ability would have exercised in the transaction of his own business affairs, and this is true, even though subsequent events should disclose that the action taken was not necessary. *Dundas v. Chrisman,* 25 Neb. 495; *In re Estate of Bush,* 89 Neb. 334; 11 R. C. L. 133, sec. 140. The administrator on withdrawing the money deposited it temporarily

in the United States National Bank, without interest, in the account of the estate. Shortly thereafter, owing to financial conditions and the fear that the money might be lost, he withdrew the money from the bank, rented a safety deposit box in the name of himself as administrator of the estate, and placed the money therein. The administrator did not profit in any way by the withdrawal of the money and the subsequent retention of the same. At the time the administrator withdrew the money, and for months subsequent thereto, the financial conditions existing were critical, and banks and large financial institutions were failing or suspending payment of their obligations almost daily. The administrator in this transaction exercised the utmost good faith, and on the facts disclosed by the record should not have been charged with the loss of any interest, but not having appealed from the judgment of the trial court charging him with the loss of $300 in interest said charge against him, as made by that court, must stand.

Counsel for appellants contend that the administrator was not entitled, on account of alleged mismanagement of the estate, to the allowance of any fee for his services. The county court allowed the administrator his statutory fees, and the district court affirmed such allowance, and on the facts and circumstances disclosed by the record the contention is without merit.

The judgment of the trial court, so far as it sustains the allowance of the account of the administrator and the charging him with the $300 loss as interest, is affirmed, but the judgment holding the will inoperative, except as to the legacy of Libbie Magers, and ordering the remaining property distributed as intestate property, is reversed, with directions to enter an order of distribution under the will in conformity with this opinion.

AFFIRMED IN PART AND REVERSED IN PART.