IN RE ESTATE OF MICHAEL CURRAN, DECEASED.
GERTRUDE MINAHAN, ADMINISTRATRIX OF THE ESTATE OF
MICHAEL CURRAN, DECEASED, APPELLEE, v. BYRL WALDO
ET AL., APPELLANTS.

71 N. W. 2d 723

Filed August 19, 1955. No. 33765.

*Elven A. Butterfield* and *Louis Lightner,* for appellants.

*Harold E. Connors,* for appellee.

Heard before SIMMONS, C. J., CARTER, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ., and FLORY, District Judge.

BOSLAUGH, J.

This appeal contests the correctness of the judgment of the district court approving the final report and account of appellee Gertrude Minahan as administratrix of the estate of Michael Curran, deceased.

Byrl Waldo, who described himself as a debtor of the estate of the deceased, filed a pleading containing his objection to the report of the administratrix of the estate. He did not assert therein and he did not attempt to prove that he was related to, or that he was an heir of the deceased or that he was a creditor of the estate. The only relationship to the estate of the deceased he alleged was that he was a debtor of it. He had no legal interest in the estate or the disposition of the money he paid to the representative of it in satisfaction of his debt to it. He was not a party in interest and he had no capacity to enter or participate in the pending contest. He was only a meddlesome volunteer in an area he had no legal sanction to invade and in which he had no right to enforce or protest. A person who may rightfully appear and participate in litigation as a party to it is generally one whose pecuniary or property interest may be affected by the litigation. A person who has no legal right or interest to enforce or defend may not generally invoke the jurisdiction of the court as a party to litigation. Byrl Waldo did not have any personal interest in the estate or in the final account of the representative thereof, and he had no legal authority to appear and participate in the contest concerning it. Lund v. Rubeck, 159 Neb. 335, 66 N. W. 2d 809. The order of the trial court denying Byrl Waldo permission to appear as a party to the proceeding and striking his pleading from the record of the cause was correct.

Delia Ernst, a sister and heir of the deceased and a

creditor of his estate, and Arthur Waldeman, a brother-in-law of the deceased and a creditor of his estate, herein referred to as appellants except when necessary to speak of them separately, by pleadings objected to the report of the administratrix in the respects hereafter mentioned and discussed. Delia Ernst alleged that Byrl Waldo "paid to the administratrix $700.00 in payment of a note and that no where in the report is it shown that the $700.00 was collected from the said Byrl Waldo." Arthur Waldeman pleaded that "she (the administratrix) should be required to repay to the estate * * * the other sums that she expended for court costs in bringing an unwarrantable suit against Byrl Waldo when she had knowledge that the said Byrl Waldo has paid to the probate court the amount of his indebtedness * * *." Byrl Waldo, hereafter spoken of as Waldo, borrowed $700 and gave his note therefor to the deceased. The note was not dated and it recited "Six Mo. ———— after date, for value received, we or either of us promise to pay to the order of MIKE CURRAN AT THE FIRST NATIONAL BANK OF ATKINSON, NEBRASKA Seven Hundred . . . . . Dollars with interest at 10% per annum after date. * * *" The note came to the knowledge and possession of Gertrude Minahan, a sister of the deceased. Waldo, the day of the funeral of the deceased in April 1951, told Gertrude Minahan that he owed the note and would pay it. Later after she had been appointed the representative of the estate she talked with Waldo about it and he said he would pay it when he sold his blue grass seed. He did not pay the indebtedness and she gave the note to John R. Gallagher, the attorney who represented her as administratrix. He wrote Waldo demanding that he pay the note and the attorney attempted otherwise to collect it. In the fall of 1951 Waldo came to the store where the administratrix was employed and said he would not pay the note to her. She, Waldo, and a brother of the deceased went to the office of her attorney where the matter of payment of the note was dis-

cussed but Waldo refused to pay it to her. The attorney advised suit on the note. The result of an action on it was uncertain. It was defective because of the absence of a date on it and it probably bore a usurious rate of interest. The administratrix made an arrangement with her attorney that he bring and prosecute suit on the note on a contingent basis, and that he should receive one-third of any amount collected thereby as his compensation and reimbursement for expenses. If nothing was realized he would receive no amount.

Appellee brought suit on the note in the county court the day of the conference in the office of her attorney September 29, 1951. Waldo consulted with the judge of the county court about the matter. The attorney for the administratrix dismissed the case without prejudice and filed an action on the note in the district court. Waldo did not appear in that court and a judgment was rendered against him. The administratrix was willing to accept $700 and the court costs but Waldo refused to pay the costs. He gave his check dated November 27, 1951, payable to the order of Holt County Court for $700 to the county judge with an endorsement thereon "Full tender on indebtedness to Michael Curran estate." This was without the knowledge of the administratrix but she and her attorney later learned of it. She did not receive the information from the county judge. The attorney for the administratrix was moving to execute the judgment against Waldo. He later received the check that was left with the county judge and deposited it for clearance. It was returned unpaid for insufficient funds of the drawer. He later, probably on February 28, 1952, collected from Waldo $700 in settlement of the note and the judgment entered thereon. The attorney retained $222.08 as compensation for his efforts and remitted to the administratrix $477.92 and this is accounted for in the final report of the administratrix.

The representative of an estate is required to inventory the personal property rights and credits owned by

the deceased at the time of his death, is chargeable in his account with them, and is obligated to make complete and just accounting of the property of the estate. In re Estate of Statz, 144 Neb. 154, 12 N. W. 2d 829. The representative of an estate may and should prosecute an action if he in good faith believes it is necessary for, the recovery of any debt of the estate. § 30-803, R. R. S. 1943; Uptegrove v. Metropolitan Life Ins. Co., 145 Neb. 51, 15 N. W. 2d 220. If the representative of an estate expends money in the prosecution of a claim of the estate for costs or the services of counsel in a reasonable amount he is entitled to be reimbursed therefor even though his efforts are unsuccessful. McDowell v. First Nat. Bank of Sutton, 73 Neb. 307, 102 N. W. 615; In re Estate of Bush, 89 Neb. 334, 131 N. W. 602.

The standard by which the action of a representative of an estate is judged in this regard is the same as applies to all his transactions on behalf of the estate he represents. If in the exercise of sound reason under the circumstances it should be concluded by an ordinary, prudent, and cautious man necessary for the best interest of the trust to act as the representative did then his action should be approved by allowing the expenditures caused thereby in his final account even though subsequent developments indicate the action was unnecessary or ill-advised. In re Estate of Bush, *supra;* In re Estate of Hunter, 129 Neb. 529, 262 N. W. 41. Waldo was obligated to pay his debt owing the estate to the administratrix. She was duty-bound to make reasonable effort to collect it from him and she was the only person who had authority to receive payment thereof. She was justified in resorting to the courts for aid in compelling the debtor to satisfy his obligation to the estate. These considerations induce the conclusion that the action of the administratrix in reference to the indebtedness of Waldo should be approved.

The deceased and Clare Connors were on or after May 31, 1949, until the date of the death of the deceased,

the owners as joint tenants of a deposit account in the Chambers State Bank payable to Mike Curran or Clare Connors. The substance of a claim of appellants is that at the time Clare Connors became a joint tenant of the deposit account with the deceased it was upon the condition, limitation, and understanding that all debts of the deceased at his death, including the expenses of his last illness, the costs of his funeral and burial, and the costs and expenses of administering his estate should and would be paid from the joint account; that contrary to this Clare Connors paid the amount owing by the deceased at the time of his death for medical and nursing services he received in his last illness, and the funeral expenses of the deceased and she filed and had approved a claim against the estate of the deceased therefor in her favor in the sum of $1,140.09; and that the administratrix paid a part of the claim and took credit therefor in her final account with the estate. Appellants say the items specified above should have been paid from the joint deposit account and only the balance remaining thereafter should have been paid to Clare Connors, and that she could not have had a legal claim against the estate of the deceased on account of the items she paid from the joint account for medical, nursing, and undertaking services rendered the deceased.

There is an absence of any proof of the condition, limitation, and understanding concerning the joint deposit account as asserted by appellants. An officer of the bank in which the joint account was created testified that the deceased asked the officer about hospital bills and funeral expenses that would accumulate incident to the last illness and death of the deceased, and the banker replied that the deceased should make some provision for them. The deceased then said Clare, meaning Clare Connors, will pay the funeral expenses and doctor bills. The banker did not and would not testify that the statements made in that conversation were in the presence or hearing of Clare Connors. When

he was asked if the conversation was at the time the joint account was made the banker answered that he was not sure when it took place, whether it was that day or whether it was another day that the deceased talked to the banker. The writing made and signed by the deceased and Clare Connors at the time the joint account was made contains no such condition or limitation and does not evidence any such understanding as that claimed and alleged by appellants. Clare Connors was with the deceased in the bank all the time he was there the day the joint account was opened. She denied the claims of appellants in this regard. She testified that her brother never mentioned to her or in her presence the subject of expenses incident to his last illness and death or the payment thereof. This contention of appellants has no evidentiary support.

The instrument signed by the deceased and Clare Connors to evidence the status of each in reference to the deposit account recites that the funds then or thereafter placed in it were and should be their joint property and owned by them as joint tenants with right of survivorship; that upon the death of either of them the balance in the account should become and be the property of the survivor; that withdrawal of the funds by the survivor should be binding upon them, their successors, and assigns; and that the entire account or any part of it might be withdrawn by or upon the order of either of them or the survivor. There is no exception, limitation of, or condition imposed upon this language. This was a deposit in a bank of this state, in the name of two persons, and presently deliverable or payable to either or to the survivor of either. It abundantly complied with the relevant statute. § 8-167, R. R. S. 1943; Parkening v. Haffke, 153 Neb. 678, 46 N. W. 2d 117. The statute contemplates the conveyance of a present interest in the deposit, as there was by express words in this instance, even though the actual enjoyment thereof by one of the joint tenants may be postponed until some

future time. The fact that Clare Connors did not exercise her right to withdraw any part of the deposit before the death of the other joint tenant is not under the circumstances of this case significant. Young v. McCoy, 152 Neb. 138, 40 N. W. 2d 540. It has often been said and has been recently repeated by this court that the statute was intended for the protection of banks and that it also fixes the property right of the payees named in the deposit unless a contrary intent affirmatively appears from the terms of the deposit. Rose v. Kahler, 151 Neb. 532, 38 N. W. 2d 391; In re Estate of Johnson, 116 Neb. 686, 218 N. W. 739. It is too certain for argument that no such contrary intention is exhibited by the terms of the deposit concerned in this case.

Appellants argue in their brief that the statute does not foreclose proof by parol evidence of a trust of the deposit in favor of the creditors of the deceased. In brief they say in substance that the bank deposit that came to Clare Connors by survivorship should be determined to be held by her in trust for the creditors of the deceased. The deficiencies in this postulate are, as above pointed out, that there is no factual foundation for it; that there is no pleading of such an issue or theory; and that the belated mention of it first appeared in the brief of appellants in this court. The comment in Scriven v. Scriven, 153 Neb. 655, 45 N. W. 2d 760, is pertinent: "It is pointed out in In re Estate of Johnson, *supra* (116 Neb. 686, 218 N. W. 739), that in a proper action a bank deposit coming to a party through right of survivorship may be determined to be held in trust for another. This appears to be a sound principle but it has no application here. The action here is in equity to determine the true status of the account. There is no contention that it is a trust fund."

The claim was timely filed by Clare Connors against the estate of the deceased in the proceedings for the administration thereof in the county court for the amount of the expenses incident to the last illness and.

death of the deceased which she paid. It was disallowed by that court and the claimant prosecuted an appeal from the order in that regard to the district court. A trial of the claim was had in that court. The record of that court recites that the matters presented by the appeal were by order made at a previous time set for hearing on August 18, 1952, and that on that date the cause was heard upon the transcript from the county court, the pleadings, and the evidence. That court found generally in favor of the claimant and against the estate; that the order of the county court disallowing the claim of Clare Connors was wrong and should be overruled and reversed; that the claim was a just and lawful one against the estate of the deceased in favor of the claimant in the sum of $1,140.09, the full amount asked; and that it should be allowed against the estate of the deceased. A judgment was rendered on the day designated for trial of the cause in harmony with the findings. There was no appeal from that adjudication and it became final.

Appellants think they are not bound by the judgment of the district court because they say they were not parties to the appeal of the claimant from the order of the county court disallowing her claim. Arthur Waldeman, one of the appellants, relies upon the fact that he was not personally present in the district court when the claim was heard and adjudicated. The record of that court recites that Delia Ernst was present and represented in court by her attorney, Francis D. Lee, and that Arthur Waldeman was represented in court by his attorney, Francis D. Lee. The record in the county court states that Francis D. Lee represented Arthur Waldeman at the hearing on claims in that court. Arthur Waldeman in this case attempts to deny that Francis D. Lee was authorized to represent him. However that may be if Waldeman stayed away and disregarded the proceedings in reference to the claim in the district court that fact does not interfere with the binding and con-

clusive effect of the judgment of that court. There is no issue of any jurisdictional defect. The proceedings to administer the estate of the deceased were in rem and everyone interested in them was bound by what was legally done whether named in the proceedings and in attendance at the time or not named and absent. In Lund v. Rubeck, *supra,* the court commented: "Administration proceedings to settle the estate of a decedent are proceedings in rem, and every person interested in such settlement is a party thereto whether he is named or not. Any person, whether he be a devisee, legatee, creditor, or the owner of a contingent interest, may appear for the purpose of protecting his rights." See, also, In re Estate of Statz, *supra;* In re Estate of Nilson, 126 Neb. 541, 253 N. W. 675. The administratrix was bound by a final judgment to apply any funds of the estate available for that purpose to the payment of the claim of Clare Connors. The administratrix breached no duty in making the payment that she did make on the claim.

Appellants were precluded from presenting any matter prejudicial to the legality of the claim of Clare Connors in the proceedings now under review that could have been legally asserted by either of them to defeat its allowance in the district court. The doctrine of res judicata is that it concludes the matters that were determined in the former proceeding and any other thing involved which might have been decided. If a litigant has a defense which he fails to present at the time and in the manner provided by law he does so at his peril. Anderson v. Anderson, 155 Neb. 1, 50 N. W. 2d 224.

The judgment allowing the claim is attempted to be assailed by appellants on the grounds that the district court wrongfully restricted and in some respects excluded the evidence desired to be presented in opposition to the validity of the claim and that in fact there was no evidence received except a stipulation. This is disputed

by the unimpeached record of that court but if what they assert were true it would be foreign and immaterial to this inquiry. Their attempt is a collateral assault upon a judgment containing no jurisdictional infirmities. The judgment of the district court in the absence of jurisdictional defect may not be impeached by any proceeding required as was the pending one to be originated in the county court. All presumptions are in favor of regularity of proceedings had in a court of general jursdiction and if the judgment recites findings of fact material to the issue before the court it will be presumed that they were justified by evidence submitted to the court. The fact that the court having jurisdiction to decide a cause may have exercised its power and dealt with the subject matter erroneously and irregularly is unimportant. Chicago, B. & Q. R. R. Co. v. Hitchcock County, 60 Neb. 722, 84 N. W. 97; Hassett v. Durbin, 132 Neb. 315, 271 N. W. 867.

An appeal from the order in reference to the account of the representative of an estate is tried in the district court as a suit in equity. § 30-1606, R. S. Supp., 1953; Egan v. Bunner, 155 Neb. 611, 52 N. W. 2d 820. An appeal to this court from the judgment of the district court in such a proceeding is heard de novo. The evidence in the present case is conflicting and incapable of being reconciled. It is the duty of this court in this situation to arrive at an independent conclusion uninfluenced by what was done in the cause before this appeal was taken except due consideration may be given to the fact that the trial court saw and heard the witnesses, considered the conflicting testimony, and accepted one version of it rather than the one in opposition thereto. An examination made and the consideration given the record in this cause has convinced this court and it finds that the final report of Gertrude Minahan as administratrix of the estate of the deceased is legal, true, and complete and that it should be approved.

The judgment of the district court should be and it is affirmed.

AFFIRMED.

FLORY, District Judge, dissenting.

There are two items allowed in the final report of the administratrix which I cannot agree should be allowed as credits. These are the items of $40, listed as costs in the district court in Minahan v. Waldo, and $218.52 shown as paid to Arthur Waldeman on his claim but which was, in fact, paid to an attorney and has never been received by Arthur Waldeman. In addition to the above items, it seems to me that the attorney's fee of $222.08, deducted by the attorney for the estate for the collection of the Waldo note, is entirely unreasonable and was an unnecessary dissipation of the funds of an insolvent estate.

The Waldo note was in the amount of $700 and drew a usurious rate of interest on its face. Waldo had admitted owing the principal of the note before any suit was commenced and had left a check for $700 with the county judge before suit was commenced in the district court. The attorney for the estate knew, or should have known, that only the face amount could be collected. He admitted on cross-examination that the check for $700 was in the hands of the county judge to be turned over to him, yet he refused to accept it because he had incurred $11.25 costs in the county court. Instead of paying these costs and collecting the note he dismissed the case, paid the costs, and filed a case in the district court thus incurring additional costs, and later took the $700 in full settlement of the judgment obtained in the district court.

The attorney for the estate, on cross-examination, stated that he knew the $700 check was in the hands of the county judge for him, and then this question was asked: "Then the only reason you dismissed the case in the county court, and filed it over in the district court, was because of the $11.00 court costs?" (Answer) "Yes,

I didn't think the estate should be taxed for those $11.25."

I cannot agree that this expenditure in attorney fees and court costs of $262.08 is reasonable when the $700 note could have been collected by the payment of $11.25. Neither can I agree that it complies with the standard set forth in the majority opinion that: "If in the exercise of sound reason under the circumstances, it should be concluded by an ordinary, prudent, and cautious man, necessary for the best interest of the trust to act as the representative did, then his action should be approved by allowing the expenditures caused thereby in his final account even though subsequent developments indicate the action was unnecessary or ill-advised."

In regard to the allowance of the payment of $218.52 to an attorney on the Arthur Waldeman claim, the attorney to whom the money was paid testified that he had never seen Mr. Waldeman and would not know him if he saw him; that he had not talked to Waldeman; and that Waldeman had not employed him. Apparently, from the record, Waldeman had never been in court with this attorney and had never signed any pleadings, and there was nothing except the attorney's statement that he represented Waldeman up to the time this check was delivered to the attorney. It is quite significant in this connection that on the hearing on the claims in the county court, the attorney now claiming to represent Waldeman dictated the stipulation allowing the Connors, Ernst, and Waldeman claims. That stipulation, Exhibit No. 4, states only that he is appearing for Delia Ernst. Also, in the "Appearances" at the beginning of the hearing (Exhibit No. 4) this attorney is listed only as attorney for Delia Ernst, and no appearance is shown for Arthur Waldeman.